Ctt

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLA KENNEDY, MINNIE HOLLEY, PATRICIA OUSLEY, ELITHA BROWN, TAMMY JOHNSON, LAURA DANIELS, LUIS GONZALEZ, TERRANCE FOWLER, and DANIEL HUDSON, <br><br> Plaintiffs, <br> v. <br><br> CITY OF CHICAGO, PHILLIP CLINE, S. APONTE, A. SILVA, J. WOODS, and P. POWERS, <br><br> Defendants. | No. 06 C 4914 <br> Hon. John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs brought a six-count Complaint against Defendants, the City of Chicago, Phillip Cline (City of Chicago Superintendent of Police), S. Aponte, A. Silva, J. Woods, and P. Powers (collectively, Defendant Officers). Plaintiffs' Complaint is brought on two grounds. Plaintiffs Kennedy, Holley, Brown, Johnson, Ousley, and Daniels (collectively, the "Pensioner Plaintiffs") are State of Illinois pensioners. The Pensioner Plaintiffs allege that the Uniform Disposition of Unclaimed Property Act ("UDUPA"), 715 ILCS 1025/0.05, *et seq.*, requires the City of Chicago to transfer any money left unclaimed with the Chicago Police Department for a period of seven years to the state pension fund. The Pensioner Plaintiffs allege that the City of Chicago has failed to transfer this money; and the City of Chicago asserts that it has a right to the cash based on a City ordinance, the Law Enforcement Disposition of Unclaimed Property Act ("LEDPA"), 765 ILCS 1031/1, *et seq.* The Pensioner Plaintiffs seek a declaratory judgment to resolve which statute governs the unclaimed money (Count I). The other Plaintiffs – Gonzalez,

Fowler, and Hudson (collectively, the "Arrestee Plaintiffs") – are persons arrested by the Chicago Police Department, who, upon their arrest, had cash taken from them and retained by the Chicago Police Department. The Arrestee Plaintiffs assert claims on behalf of a class of persons who were arrested in Cook County, Illinois, by a Chicago Police Officer any time after September 11, 2001, and allege their rights, under the Due Process and Takings Clauses, were violated. (Counts II-VI).

Currently before the Court is the Defendants' Motion to Dismiss the First Amended Complaint or, alternatively, for Summary Judgment. With respect to the Arrestee Plaintiffs (Counts II-V), Defendants attach documents outside of the pleadings, not properly considered by the Court on a Motion to Dismiss. Defendants filed a 56.1 Statement of Undisputed Material Facts, and Plaintiffs have responded. Thus, as to some of these counts, the motion to dismiss shall be considered as a motion for summary judgment.

## LEGAL STANDARD

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004) (*Sprint*). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, __ U.S. __, __, 127 S. Ct. 1955, 1964 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration in *Bell*

2

*Atlantic*). "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 767 (7th Cir. 2007).

Summary judgment is appropriate under Rule 56(c) when no genuine issue of material fact exists or when, drawing all factual inferences in favor of the nonmoving party, no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992).

The following operative facts from Plaintiffs' First Amended Complaint are taken as true for the purposes of the motion to dismiss. The undisputed facts, for the purposes of the motion for summary judgment, are taken from Defendants' Local Rule 56.1 (a) statements of material facts and exhibits ("Defs' 56.1").

*Count I*

Pensioner Plaintiffs allege that for at least the last 45 years, the City of Chicago and the Chicago Police Department ("CPD") have enforced a policy that required police officers to issue inventory receipts whenever an officer seized money from an arrestee. (¶ 8). The City maintains that a local ordinance gives the Superintendent of Police the authority to declare as forfeited any cash seized from the arrestees. (¶ 15). Throughout the time this policy has been in effect, the UDUPA, 715 ILCS 1025/0.05, *et seq.*, also has been in full force and effect. (¶ 9). The UDUPA provides that cash in the possession of a municipality or police department that is rightfully

owned by a citizen but goes unclaimed for seven years must be transferred to the treasurer of the State of Illinois. (¶ 10). The UDUPA further provides that cities and municipal police departments must file annual reports of all such unclaimed cash, including relevant identifying information regarding the owner of the unclaimed cash. (¶¶ 11-12). The UDUPA also provides that the state treasurer shall deposit the unclaimed cash in the state pension fund for the benefit of state employees and state pensioners. (¶ 12).

Pensioner Plaintiffs were employed by the State of Illinois, contributed to the State of Illinois Pension Plan, and are or will be entitled to state pensions. (¶¶ 1-2). They assert, on behalf of themselves and others similarly situated, that the City of Chicago and Defendant Cline systematically violated the UDUPA by intentionally withholding information related to unclaimed cash and that the City is wrongfully withholding approximately $25 million that has accumulated over the past 45 years. (¶ 13).

## ANALYSIS AS TO COUNT I

Defendants assert that Count I should be dismissed because the UDUPA does not create a private right of action. Specifically, Defendants assert that the UDUPA's enforcement clause only provides that the treasurer can enforce the delivery of unclaimed property under the UDUPA and does not provide a basis for the Pensioner Plaintiffs' claims.

Defendants assert that the Pensioner Plaintiffs lack a constitutionally protected property right upon which to base a declaratory judgment action, citing *People ex rel., Sklodowski v. State*, 182 Ill. 2d 220, 232-33 (1998) (*Sklodowski*) (dismissing complaint seeking mandamus, declaratory and injunctive relief based on state officials' alleged failure to make required contributions to the state pension system because the plaintiffs did not have a vested right to

4

enforce pension funding). Defendants further assert that Pensioner Plaintiffs' merely speculative injury cannot be the basis of a claim for declaratory relief.

The Pensioner Plaintiffs cannot properly claim standing under the Declaratory Judgment Act because the money at issue has not yet been deposited into the State's pension fund. Thus, Pensioner Plaintiffs, by their own admission, have no vested property right in the unclaimed money, which is the subject of their lawsuit, and, as such, have no standing to bring a declaratory action. As the plaintiffs in *Sklodowski* did not have standing to enjoin the State's transfer of monies because they did not have a constitutional or contractual right to enforce funding levels of the pension, Pensioner Plaintiffs here have no standing to compel the delivery of monies being held by the City that have not been deposited into the pension fund in an attempt to enforce funding levels of the pension . See *Sklodowski*, 182 Ill. 2d at 232-33. Accordingly, Pensioner Plaintiffs' alleged injury is merely speculative and cannot be the basis for stating a claim for declaratory relief. See *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (injury warranting declaratory relief must be "certainly impending"); *Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000) (injury must be concrete, particularized and actual or imminent, not conjectural or hypothetical).

Where the legislature has not created a cause of action, a plaintiff class's claim must be dismissed. *Metzger v. DaRosa*, 209 Ill. 2d 30 (2004). The Pensioner Plaintiffs, however, argue they are not seeking to privately enforce the UDUPA; rather, they seek a declaratory judgment and assert that jurisdiction derives from the federal Declaratory Judgment Act, 28 U.S.C. § 2201, as applied to their Due Process and restitution claims. The Pensioner Plaintiffs' argument is not persuasive.

The Declaratory Judgment Act does not, by itself, confer jurisdiction in federal courts; but "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16, 20 (1983) (*Franchise Tax Bd.*). The Declaratory Judgment Act is limited to "cases of actual controversy." *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1991). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937) (*Aetna*) (citations omitted). An actual controversy is "distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna*, 300 U.S. at 242.

### Counts II - III

Arrestee Plaintiff Gonzalez[1] alleges that he was arrested on April 4, 2006, at which time $401.00 was taken from him and inventoried by CPD Officers Aponte and Silva. (Count II, ¶8; Defs' 56.1 ¶ 8). He was issued Property Inventory No. 10722020, which was marked "Hold for Investigation and/or Evidence." (Defs' 56.1 ¶ 9). After a trial, he was found not guilty on February 28, 2007. (Defs' 56.1 ¶ 10). On April 2, 2007, a check was issued by the CPD Evidence and Recovered Property Section ("ERPS") in the amount of $401.00 and sent to him, in care of his counsel, *via* UPS 2-day delivery on April 6, 2007. (Defs' 56.1 ¶ 11). Through his counsel, he returned the check, uncashed, to the ERPS on or about April 18, 2007. (Defs' 56.1 ¶ 12).

---

[1]The arrestees are (1) persons arrested and (2) persons arrested for a narcotics crime.

6

Arrestee Plaintiff Fowler alleges that he was arrested on May 2, 2005, for a *narcotics* violation, at which time $20.00 was taken from him and inventoried by Officers Woods and Power. (Count III, ¶8; Defs' 56.1 ¶ 13). He was issued a Property Inventory, which was marked "Hold for Investigation and/or Evidence." (Defs' 56.1 ¶ 14). On July 18, 2005, Arrestee Plaintiff Fowler was sent, *via* first class United States mail, a notice from the CPD Narcotics & Gang Investigation Section, Asset Forfeiture Unit, advising him that the money inventoried at the time of his arrest may be claimed at the ERPS; the Arrestee Plaintiffs object on the grounds that no discovery has been conducted and that without discovery, they cannot respond to this assertion, citing Rule 56(f). (Defs' 56.1 ¶ 15; Pls' Resp. to Defs' 56.1 at ¶ 15).

Arrestee Plaintiffs Gonzalez and Fowler bring their claims "pursuant to the Fifth and Fourteenth Amendments of the Constitution of the United States and pursuant to 42 U.S.C. Sec. 1983." (Count II, ¶ 5; Count III, ¶ 5). They request that the Court "enter an order requiring the Defendants to return the property seized from [them]" and to award damages, costs and fees. (*Id.*, Count II, p. 8; Count III, p. 11).

### Count IV

In Count IV, Arrestee Plaintiffs Gonzalez and Fowler seek to maintain, on a class basis, claims for "restitution and equitable relief" for persons who were arrested by the Chicago Police Department after September 11, 2001, and had money in their possession taken and inventoried. (Count IV, ¶ 41). For these class claims, Arrestee Plaintiffs Gonzalez and Fowler seek the "return of class member money" and not damages. (Count IV, ¶ 50). Further, Arrestee Plaintiffs seek a declaration that "the City's [inventory] policy is unconstitutional and to enjoin the City from continuing the policy." (Count IV, p. 13.)

*Counts V-VI*

Arrestee Plaintiff Hudson was arrested on December 10, 2004, for a *narcotics* violation, at which time $28.00 was inventoried by the arresting officers. (Defs' 56.1 ¶ 16). Hudson was issued a Property Inventory No. 10449090, which was marked "Property Owner Notified." (Defs' 56.1 ¶ 17). Defendants assert that on February 23, 2005, Arrestee Plaintiff Hudson was sent, *via* first class United States mail, a notice from the CPD Narcotics & Gang Investigation Section, Asset Forfeiture Unit, advising him that the money inventoried at the time of his arrest may be claimed at the ERPS. The Arrestee Plaintiffs again object on the grounds that no discovery has been conducted and that without discovery, they cannot respond to the allegations, citing Rule 56(f). (Defs' 56.1 ¶ 18; Pls' Resp. to Defs' 56.1 at ¶ 18).

In Count V, *narcotics* Arrestee Plaintiff Hudson alleges constitutional violations of "the Due Process Clause and the Takings Clause" and seeks damages, fees and costs; a declaration that the City's policy is unconstitutional; and an injunction against the City's continuation of its alleged policy.[2] (Count V, at p. 15). In Count VI, based on the state law torts of "restitution, unjust enrichment, and conversion," Arrestee Plaintiff Hudson seeks damages, fees and costs. (Count VI, p. 16). The Defendant Officers are not named as defendants in Counts V and VI.

---

[2] The parties, in their briefs, discuss Arrestee Plaintiff Hudson as a narcotics arrestee, although the Amended Complaint is silent in this regard. Arrestee Plaintiff Hudson will be considered a narcotics arrestee. *See also* Defs' 56.1 at ¶ 16.

## ANALYSIS AS TO COUNTS II THROUGH VI

### Gates v. Towery

The narcotic Arrestee Plaintiffs' allegations share a core set of operative facts with a complaint filed in the Northern District of Illinois on March 23, 2004, *Gates, et al v. Towery, et al.*, Case No. 04 C 2155, that is currently pending before Judge Ruben Castillo. The allegations and court rulings discussed below are taken from several rulings in the *Gates* case in both the district court and Circuit Court. *See Gates v. Towery*, 331 F. Supp. 2d 666 (N.D. Ill. 2004) (*Gates I*) (partially granting and partially denying plaintiffs' motion to reconsider); *Gates v. Towery*, No. 04 C 211, 2004 WL 2583905 (N.D. Ill. Nov. 10, 2004) (*Gates II*) (granting plaintiffs' motion for class certification), *aff'd*, 430 F. 3d 429 (7th Cir. 2005) (*Gates III*); *Gates v. Towery*, 435 F. Supp. 2d 794 (N.D. Ill. 2006) (*Gates IV*) (partially granting and partially denying defendants' motion to dismiss); *Gates v. Towery*, 456 F. Supp. 2d 953 (N.D. Ill. 2006) (*Gates V*) (redefining the class and partially granting defendants' motion to dismiss); *Gates v. Towery*, ___ F. Supp. 2d ___, 2007 WL 2446220 (N.D. Ill. Aug. 24, 2007) (*Gates VI*) (granting in part and denying in part defendants' motion for summary judgment).

The two plaintiffs in *Gates*, who were both arrested prior to December 14, 2004, and one of whom was arrested on a narcotics charge, brought federal constitutional and state-law claims against the City of Chicago, Phillip Cline (the Superintendent of Police), and individual police officers, challenging the City's return procedures for cash that was taken from them and inventoried at the time of their arrest. *See Gates V*, 456 F. Supp. 2d at 957 - 58. On

9

October 16, 2006, after remand from the Seventh Circuit, Judge Castillo certified two federal Due Process subclasses for the period from March 23, 2002 through December 13, 2004,[3] and a state-law conversion and replevin class from March 23, 2003 to present. *Gates V*, 456 F. Supp. 2d at 969-70. Also, Judge Castillo applied the doctrine of *res judicata* based on a consent decree issued in the case *Pollard v. Daley*, 1989 WL 152394 (N.D. Ill. Dec. 4, 1989) (*Pollard*), which barred the non-damages Due Process claims of plaintiffs arrested for a narcotics violation after November 30, 1989. *Gates V*, 456 F. Supp. 2d at 966. Judge Castillo held that to the extent that the plaintiff narcotics arrestee sought injunctive relief, his remedy was "to bring suit to enforce the *Pollard* consent decree." *Gates V*, 456 F. Supp. 2d at 966.

Other claims brought by the *Gates* plaintiffs included claims based on the Takings Clause, the UDUPA, restitution and unjust enrichment. *See Gates I*, 331 F. Supp. 2d at 672-73 (N.D. Ill. 2004); *Gates IV*, 435 F. Supp. 2d at 802-03 (N.D. Ill. 2006); *Gates V*, 456 F. Supp. 2d at 960-61.

Both narcotics Arrestee Plaintiffs Fowler and Hudson were arrested for a narcotics violation after November 30, 1989, as was a plaintiff in *Gates*. Here, Arrestee Plaintiffs Fowler and Hudson seek equitable relief, including restitution, declaratory and injunctive relief. Plaintiffs assert that *Pollard* does not have a *res judicata* effect on narcotics Arrestee Plaintiffs Fowler's and Hudson's claims because (they allege in their response) the policies of the City of Chicago changed in December 2004, after the *Pollard* consent decree. However, *Pollard* specifically applies to all narcotics-related arrests after November 30, 1989, regardless of when they occurred in relation to the alleged change in policy. In *Gates*, Judge Castillo found that all three requirements for applying *res judicata* – an identity of the parties or their privies; an identity of

---

3 The Chicago Police Department revised its inventory policy on December 14, 2004.

the causes of action; and a final judgment on the merits – were met as to the narcotics-arrestee plaintiffs' equitable damages claims. *Gates V*, 456 F. Supp. 2d at 963. Specifically, Judge Castillo found that the *Pollard* case, which was certified under both Rule 23(b)(2) and (b)(3), bound future class members from bringing a separate suit for equitable relief because there was an identity of the causes of action in *Pollard* and the non-damages injunctive relief sought in *Gates* and because a consent decree in the context of class-action litigation is considered a final judgment on the merits. Further, while Judge Castillo did not reach the issue of whether the restitution-based claims would also be barred by the doctrine of *res judicata*, the application of the doctrine applies to those claims as well, as the *Pollard* class plaintiffs also sought an order directing the City of Chicago to return their money. Here, as in *Gates*, the non-damages Due Process claims of two of the narcotics Arrestee Plaintiffs before this Court – Fowler and Hudson – are barred by *res judicata* based on the *Pollard* consent decree. Therefore, Defendants' motion to dismiss is granted in favor of the Defendants as to narcotics Arrestee Plaintiffs Hudson's and Fowler's equitable and restitution-based claims.

Also, here, as in *Gates*, all of the Arrestee Plaintiffs bring claims under the Takings Clause. Illinois law provides remedies to individuals who claim that their property has been taken by the government, and a property owner may not state a claim in federal court under the Takings Clause if he has not yet pursued the available state remedies for seeking just compensation. Here, Arrestee Plaintiffs fail to allege that they have taken any steps under Illinois law to recover the inventoried cash. Under similar circumstances, Judge Castillo, in *Gates*, dismissed the Takings Clause claims. *Gates I*, 331 F. Supp. 2d at 672-73. Judge Castillo's opinion is persuasive. Arrestee Plaintiff Gonzalez's Taking Clause claims are dismissed on this basis. Arrestee Plaintiffs

Hudson's and Fowler's remaining claims under the Taking Clause are dismissed solely on this basis. The narcotics Arrestee Plaintiffs Fowler's and Hudson's equitable and restitution-based claims also must be dismissed on this basis.

The Arrestee Plaintiffs here have sued the individual Police Officers in their individual capacities. Arrestee Plaintiffs fail to allege that the Officers had any personal involvement in the return of the arrestees' money, which is the basis of the Amended Complaint. *See Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987) (affirming the dismissal of individual officers on a motion to dismiss plaintiff's § 1983 claims where plaintiff failed to plead personal involvement in constitutional violation by individual defendants). Thus, the claims against Defendants S. Aponte, A. Silva, J. Woods, and P. Powers, in their individual capacities, are dismissed with prejudice.

Finally, the Defendants assert that Arrestee Plaintiff Hudson's claim for unjust enrichment should be dismissed. Defendants assert that Arrestee Plaintiff Hudson has failed to plead any cognizable benefit to Defendants resulting from the retention of his $28.00. Moreover, Defendants maintain that because Defendants offered Arrestee Plaintiff Hudson the return of his money on February 23, 2005, there are no facts supporting a claim for unjust enrichment. In support, the Defendants cite the Seventh Circuit's opinion in *Gates III*, in which that court noted, as *dicta*, that the City of Chicago may tender amounts inventoried to avoid unjust enrichment. *See Gates III*, 430 F.3d at 432. The Court need not reach the question of whether an unjust enrichment claim is mooted by the tender of amounts inventoried because there are material issues in dispute with respect to whether the City of Chicago tendered this money to Arrestee Plaintiff Hudson. The Plaintiffs have objected to Defendants' statement of facts on the grounds

that no discovery has been conducted and cited Rule 56(f). (Pls' Resp. to Defs' 56.1 at ¶ 18). Thus, it would be inappropriate to grant summary judgment on Arrestee Plaintiff Hudson's unjust enrichment claim.

*Remaining Claims of the Arrestee Plaintiffs*

Defendants assert that the remainder of the claims of the Arrestee Plaintiffs should be dismissed because: (1) all Arrestee Plaintiffs fail to allege a Due Process claim; (2) non-narcotics Arrestee Plaintiff Gonzalez does not have standing to seek injunctive relief because he does not allege that he will be arrested again; and (3) non-narcotics Arrestee Plaintiff Gonzalez does not have standing to seek restitution because he was tendered the return of his money.

First, Defendants argue that the Arrestee Plaintiffs fail to allege a Due Process claim – for which the Plaintiffs seek damages, fees, costs, restitution of the inventoried funds, declaratory and injunctive relief[4] – because, as a matter of law, the City of Chicago's inventory receipts provide constitutionally adequate notice. In *City of West Covina v. Perkins*, 525 U.S. 234 (1999) (*West Covina*), the Supreme Court held that individualized notice of state-law remedies is not required where the remedies are made generally available through published state statutes and case law. *West Covina*, 525 U.S. at 241. Defendants assert that they have not only met but exceeded these constitutional standards because Arrestee Plaintiff Gonzalez received notice through publically available sources (the Illinois Criminal Code, Chicago Police Department Directives, and the

---

4 Only the equitable relief sought by narcotics Arrestee Plaintiffs Hudson and Fowler in their Due Process claims were dismissed above. *See, supra,* at 9-10.

13

Property Inventory); and Arrestee Plaintiffs Fowler and Hudson received notice through the *Pollard* consent decree, which is publically available, and through individualized *Pollard* Notices.

The Court in *West Covina* distinguished procedures that are available to the public from procedures that are buried in internal policies or orders. When the policy is not in writing, is arcane or is not openly available to the public, the policy does not satisfy the meaningful notice requirement of the Due Process Clause, according to the Court. *West Covina*, 525 U.S. at 242-43. The Court further asserted that Due Process requires individual, written notice when the policy is "arcane and [is] not set forth in documents accessible to the public." *West Covina*, 525 U.S. at 242-43. The parties here, of course, disagree as to whether the documents are accessible or arcane. Thus, there are issues of fact not properly resolved by the Court on a motion to dismiss. Further, there are material factual disputes with respect to the adequacy of the notice; and, thus, summary judgment is also not appropriate on this basis.

Second, the Defendants assert that Arrestee Plaintiffs do not have standing to seek prospective declaratory and injunctive relief because they do not allege that they will be arrested again. Arrestee Plaintiffs contend that the "capable of repetition yet evading review" doctrine affords them standing to seek prospective relief. The Defendants assert that this argument was rejected by the Seventh Circuit in *Gates III*. In *Gates III*, the Seventh Circuit, citing *City of Los Angeles v. Lyons*, 461 U.S. 93 (1983) (*Lyons*), held that the arrestee plaintiffs lacked standing for prospective relief because they did not contend that they were likely to be arrested again. *Gates III*, 430 F.3d at 432. The same allegations are lacking here. Thus, the Arrestee Plaintiffs' claims for prospective declaratory and injunctive relief are dismissed.

14

still pending; and since, at the time suit was filed, the funds could have been evidence in the criminal proceedings or classified as derivative contraband, Arrestee Plaintiff Gonzalez lacks standing to claim his funds were being wrongfully withheld. For this proposition, the Defendants cite *G. Heileman Brewing Co, Inc. v. Anheuser-Busch, Inc.*, in which the court held that "whether a justiciable controversy exists is measured by examining the state of affairs at the time the complaint is filed." *G. Heileman Brewing Co, Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 990 (7th Cir. 1989). Whether Arrestee Plaintiff Gonzalez's cash was necessarily retained as evidence is a question of fact that cannot be resolved on a motion to dismiss. For purposes of a motion to dismiss, the Court must assume the inventoried cash was not evidence. *De Walt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Further, there are material factual disputes with respect to whether the cash was used as evidence – Arrestee Plaintiffs assert that the prosecution did not offer the cash as evidence when Arrestee Plaintiff Gonzalez went to trial and was acquitted. Thus, summary judgment is also not appropriate on this issue.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The Defendants' alternate motion for summary judgment is denied. The claims against the Defendant Officers S. Aponte, A. Silva, J. Woods, and P. Powers, in their individual capacities, are dismissed with prejudice. The Pensioner Plaintiffs' claims alleged in Count I are dismissed

with prejudice. As specified above, (1) all Arrestee Plaintiffs' equitable claims, (2) all Arrestee Plaintiffs' claims under the Takings Clause, and (3) narcotics Arrestee Plaintiff Fowler's and Hudson's restitution-based claims are dismissed. For the reasons stated above, Defendants' motion is denied as to the remaining claims of Counts II through VI.

Dated: December 17, 2007

JOHN W. DARRAH
United States District Court Judge