UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNEDY, et al., )
)
    Plaintiffs, )
)
) No. 06 C 4914
v. )
) Judge John W. Darrah
CITY OF CHICAGO, et al., )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs were arrested for non-narcotics offenses, and the money then in their possession was inventoried by the Chicago Police Department ("CPD"). Plaintiffs brought suit against the City of Chicago and Jody Weis, Superintendent of the CPD, seeking damages and restitution. Before the Court are the parties' cross-motions for summary judgment.

## BACKGROUND

CPD inventories money recovered from arrestees, using a computerized system known as "eTrack." (Defs.' 56.1(a)(3), at ¶¶ 24, 27.) eTrack prints four copies of each Property Inventory: the first copy remains with the property, the second is sent to CPD's Evidence and Recovered Property Section ("ERPS"), the third is the court copy and the fourth is for the arrestee. (Defs.' 56.1(a)(3), at ¶ 29.) In the lower lefthand corner of the Property Inventory appear the following three options with the instruction "check one": (1) "HOLD FOR INVESTIGATION AND/OR EVIDENCE, (2) PROPERTY OWNER PICK-UP PURSUANT TO NOTICE OF INVENTORY RETURN POLICY, and (3) TO BE DISPOSED OF BY CUSTODIAN (NOT TO BE RETURNED). (Defs.' 56.1(a)(3), at ¶ 30.) The first designation is used when the inventoried money may be connected to a crime or when the ownership is uncertain. (Defs.' 56.1(a)(3), at

¶¶ 31, 32.) The second designation is used for inventoried property that is not subject to forfeiture, is not evidence and for which there is an identified owner. (Defs.' 56.1(a)(3), at ¶ 41.) The third designation is not material here. ERPS maintains money inventoried as "Hold for Investigation and/or Evidence" until reclaimed. (Defs.' 56.1(a)(3), at ¶ 34.) The money is either deposited in a bank account maintained by the CPD or maintained in its original form. (Defs.' 56.1(a)(3), at ¶ 34.)

To reclaim money inventoried "Hold for Investigation and/or Evidence," the arrestee must present to ERPS either a criminal court order, stating that the funds may be released, or a completed Property Release Order (CPD - 34.554), commonly referred to as "Form 54." (Defs.' 56.1(a)(3), at ¶ 36.) The CPD officer who completed the inventory may issue a Form 54 when the property is no longer needed for evidence or further investigation. (Defs.' 56.1(a)(3), at ¶ 38.) To obtain a Form 54, an arrestee must return to the district of arrest and present the Property Inventory to the desk sergeant, who will then attempt to connect the arrestee with the arresting officer. (Defs.' 56.1(a)(3), at ¶ 39.)

Plaintiff Luis Gonzalez was arrested on April 5, 2006, for an alleged weapons offense. (Pls.' 56.1(b)(3), at ¶ 1.) At the time of his arrest, Gonzalez had $401 in his possession. (Pls.' 56.1(b)(3), at ¶ 1.) Gonzalez was issued a Property Inventory pursuant to the CPD procedure and in the form described above. (Pls.' 56.1(b)(3), at ¶ 3.) On February 28, 2007, Gonzalez was found not guilty of the charged offense. (Pls.' 56.1(b)(3), at ¶ 4.) The City of Chicago did not request a forfeiture of the money seized from Gonzalez. (Pls.' 56.1(b)(3), at ¶ 4.) Between the day of his arrest and the finding of not guilty, Gonzalez and his attorney made several attempts to retrieve the $401 seized from Gonzalez but were not successful. (Pls.' 56.1(b)(3), at ¶ 6.)

Plaintiffs Luis Gonzalez, Terrance Fowler and Eddie Jenkins have each brought individual claims under 42 U.S.C. § 1983, alleging that Defendants violated their due process rights under the Fifth and Fourteenth Amendments. Plaintiffs have also brought two class-action claims. The two classes – a Due Process Class, whose claims mirror the individual claims, and a Restitution class, which alleges violation of state law – were certified by the Court on July 10, 2008. The Due Process Class is defined as:

> All persons from whom money was seized in connection with their arrest by a Chicago Police Officer between *December 13, 2004*, and the present, provided that: (a) the person was issued an inventory receipt marked as "Hold for evidence and/or investigation" and not marked "Hold in Original Form"; (b) the inventory receipt was not marked as "narcotics related"; (c) their criminal charges have been resolved; and (d) no forfeiture action was commenced against the money, and the time for filing such an action has expired. (emphasis added.)

The Restitution Class is defined as:

> All persons from whom money was seized in connection with their arrest by a Chicago Police Officer between *September 11, 2001*, and the present, provided that: (a) the person was issued an inventory receipt marked as "Hold for evidence and/or investigation" and not marked "Hold in Original Form"; (b) the inventory receipt was not marked as "narcotics related"; (c) their criminal charges have been resolved; and (d) no forfeiture action was commenced against the money, and the time for filing such an action has expired. (emphasis added.)

Defendants have moved for summary judgment with respect to Plaintiffs' entire Complaint. Plaintiffs have moved for summary judgment with respect to the claims of the Restitution Class and with respect to their due process claim that they were entitled to a post-seizure hearing.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## ANALYSIS

### Section 1983 Due Process Claim

Plaintiffs allege that Defendants violated their due process rights by failing to provide arrestees with sufficient notice of how to reclaim their inventoried money. To prove that Defendants violated Plaintiffs' rights under the Fifth and Fourteenth Amendments in violation of § 1983, Plaintiffs must show that Defendants "'deprived them of a right secured by the Constitution or laws of the United States,' and that the Defendants 'acted under color of state law.'" *Gates v. Towery*, 507 F.Supp.2d 904, 912-13 (N.D. Ill. 2007) (*Gates*) (quoting *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005)). A municipality may not be held liable under Section 1983 on the theory of respondeat superior but, rather, only when constitutional injury is inflicted in execution of the municipality's official policy or custom. *Gates*, 507 F.Supp.2d at 913. A municipality may violate § 1983 in any of three ways: "(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'" *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (quoting *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)). Plaintiffs' claim is based on the first of these alternatives – that Defendants' express policy creates the constitutional violation.

Turning first to Plaintiffs' argument that arrestees receive insufficient notice of how to reclaim their inventoried money, Defendants argue that Plaintiffs' argument is foreclosed by the United States Supreme Court's opinion in *City of West Covina v. Perkins*, 525 U.S. 234 (1999)

(*Covina*). In *Covina*, the Court considered "whether the Constitution requires a State or its local entities to give detailed and specific instructions or advice to owners who seek return of property lawfully seized but no longer needed for police investigation or criminal prosecution." *Covina*, 525 U.S. at 236. The Court held that "[w]hen the police seize property for a criminal investigation . . . due process does not require them to provide the owner with notice of state-law remedies." *Covina*, 525 U.S. at 240. The Court reasoned: "no . . . rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options." *Covina*, 525 U.S. at 241.

Here, Defendants identify two alternative procedures for recovering inventoried money, both of which, Defendants argue, are accessible through publicly available sources. First, Defendants contend, arrestees may recover their inventoried money by means of a Form 54. As noted above, arrestees may obtain a Form 54 by contacting the desk sergeant in the district of their arrest. The desk sergeant will then attempt to connect the arrestee with the arresting officer, whose signature is necessary to properly complete the Form 54. According to Defendants, the proper procedure for obtaining a Form 54 can be found in CPD's General Orders, which are made available to the public during the Police Board's monthly meetings.

Defendants' argument that the Form 54 procedure is publicly available is not convincing. First, CPD's General Orders are significantly less accessible to the public than the public statutes at issue in *Covina*. According to Defendants, the General Orders are only available once a month

– roughly once every thirty days – which is not helpful to an arrestee whose deadline for claiming his money is only thirty days. Furthermore, the location and time at which the General Orders are available is also restricted; Defendants have not identified any way an arrestee could obtain a copy of the General Orders other than attending a monthly meeting of the Police Board.

Second, arrestees are provided no notice that the Form 54 procedure even exists. Defendants fail to explain how an arrestee would even know to search out CPD's General Orders, in the first place. Determining the proper Form 54 procedure through CPD's General Orders is somewhat like finding a needle in a haystack without first being told to look for the needle. This concern is compounded by the Property Inventory's statement that a court order is required for the release of the seized property. This statement could be taken to imply that no method of recovery exists, other than a court order.[1] Thus, there is at least a factual question as to whether the Form 54 method of recovery is readily discoverable through publicly available sources such as to put arrestees on notice of the availability of that method.

The second alternative Defendants identify by which an arrestee may recover inventoried money is through a court order. The Property Inventory provided to arrestees is titled "Notice of Inventory Return Policy" and states "Pursuant to State Law, property which is evidence requires a court order for release." Further down, under the heading "Arrestee Information," the Property Inventory states the chapter and section of an Illinois statute, 725 ILCS 5/108-2 ("Section 108-2"). Section 108-2 essentially provides that the property shall be disposed of in accordance with

---

[1] The Court notes that the previous version of the Property Inventory, which was in use prior to December 14, 2004, instructs the arrestee to "return to the police station where your property was taken from you . . . for forms and instructions necessary for the return of your property." It is unclear why this instruction was removed from the version of the Property Inventory at issue in this case.

7

725 ILCS 5/108-11 ("Section 108-11").[2] Section 108-11 provides only the following statement: "The court before which the instruments, articles or things are returned shall enter an order providing for their custody pending further proceedings."

Defendants argue that Section 108-2 (which ultimately refers to Section 108-11) provides arrestees with notice of the correct procedure for the recovery of inventoried money. However, on this record, it is unclear whether arrestees who should be entitled to the return of their money are always able to secure its release through a court order. As noted above, Plaintiff Gonzalez, even with the assistance of an attorney, was not able to recover the $401 seized from him. It was not until Gonzalez brought suit that the City offered to return his money. Additionally, Defendants do not explain how arrestees against whom no charges are filed may recover their property through court order, as such individuals may never be taken before a court. Furthermore, arrestees may be unable to secure a court order after the conclusion of the criminal proceedings if the court determines that the case has been closed and will entertain no further motions. Therefore, it cannot now be determined if Section 108-2 provides notice to arrestees of effective remedial procedures available for recovering seized money.

---

[2] 725 ILCS 5/108-2 provides in pertinent part:
> An inventory of all instruments, articles or things seized on a search without warrant shall be given to the person arrested and a copy thereof delivered to the judge before whom the person arrested is taken, and thereafter, such instruments, articles or things shall be handled and disposed of in accordance with Section [] 108-11 . . . of this Code. If the person arrested is released without a charge being preferred against him all instruments, articles or things seized, other than contraband, shall be returned to him upon release.

8

Therefore, because the factual issues remain with respect to whether the arrestees have adequate notice of a method of recovering inventoried money, Defendants' motion for summary judgment is denied with respect to Plaintiffs' due process claims.

*Plaintiffs' State-Law Restitution Claims*

Plaintiffs' restitution claims turn on whether Defendants have a valid ownership interest in the inventoried money. Defendants claim that they are justified in holding unclaimed funds by virtue of both city ordinance and state statute. Turning to the state statute first, Defendants claim that the Law Enforcement Disposition of Property Act ("LEDPA"), 765 ILCS 1030/1, *et seq.*, entitles them to ownership of seized money that has gone unclaimed. Defendants argue that once property goes unclaimed for thirty days at the conclusion of the arrestee's criminal proceedings, it becomes abandoned and LEDPA applies. Under LEDPA, Defendants argue, abandoned property that remains in CPD custody for six months without being claimed by the owner shall be forfeited and disposed of either by auction or by transfer of the property to the City.

Plaintiffs argue that LEDPA does not entitle Defendants to retain the seized money. Plaintiffs point out that under § 2(a), the law enforcement agency holding the property "shall make reasonable inquiry and efforts to identify and notify the owner or other persons entitled to possession." 765 ILCS 1030/2. Defendants admit that other than the Property Inventory provided upon arrest, they have made no efforts to notify the arrestees that the property is subject to forfeiture. Plaintiffs also argue that LEDPA does not apply to money since it provides for abandoned property to be auctioned off; and as Plaintiffs point out, an auction of money does not make sense.

9

Defendants' compliance with LEDPA is besides the point, however, as the terms of the act itself reveal that it does not apply to the instant situation. Section 1 of LEDPA provides:

> This Act is applicable to all personal property of which possession is transferred to a police department or other law enforcement agency of the State or a county, city, village or incorporated town, under circumstances supporting a reasonable belief that such property was abandoned, lost or stolen or otherwise illegally possessed, except property seized during a search, and retained and ultimately returned, destroyed or otherwise disposed of pursuant to order of a court in accordance with Section 108-11, 108-12 or 114-12 of the "Code of Criminal Procedure of 1963" or other law hereafter applicable to property thus retained, and except property of which custody and disposition is prescribed by Article II of Chapter 4 of The Illinois Vehicle Code.

765 ILCS 1030/1. Two separate clauses within this paragraph demonstrate that the act was not intended to apply to the situation here. First, the act excludes "property seized during a search, and retained and ultimately returned, destroyed or otherwise disposed of pursuant to order of a court in accordance with Section 108-11." This would seem to exclude from the scope of the act any property that was subject to disposal by a court under § 108-11. Second, the act covers only "personal property of which possession is *transferred* to a police department . . . *under circumstances* supporting a reasonable belief that such property was abandoned . . . ." 765 ILCS 1030/1 (emphasis added). Defendants argue that they have a reasonable belief that the seized money was abandoned. That may be so. However, the circumstances under which possession was acquired by the CPD do not support application of Section 1 of LEDPA. As Plaintiffs point out, the money was seized by the CPD from the arrestee's person, and a Property Inventory was given to the arrestee. These *circumstances* of *transfer* do not support the reasonable belief that the

arrestee was abandoning the money. Defendants may have grounds to believe that the arrestees later abandoned the money, but that later abandonment does not fall under the scope of LEDPA. Therefore, LEDPA does not apply to the money at issue in this case.

Defendants next point to a Chicago Ordinance, Chi. Mun. Code § 2-84-160 (the "Ordinance"), which provides, in part:

> The custodian shall keep a record of all property which may be seized or otherwise taken possession of by the Police Department. If such property shall not be claimed by the rightful owner thereof and possession surrendered to such owner within 30 days from the date of final disposition of the court proceedings . . . in connection with which such property was seized or otherwise taken possession of, or, in the case there are no court proceedings, then if such property shall not be claimed by the rightful owner thereof and possession surrendered to such owner within 30 days from the date of such seizure or taking by the police, said custodian shall proceed to dispose of said property. If such property be deemed saleable, the custodian shall cause to be published in a daily newspaper of the city a notice of sale at public auction of such property describing in general terms and not by individual items and shall be given notice that if such property be not claimed by the rightful owners thereof within ten days from the date of such publication such property will be sold at public auction . . . . Provided, that any of such unclaimed property, if deemed by the Superintendent of Police to be of use to any city department, may be retained for use of such department. Provided, further, that any of such unclaimed property deemed by the custodian to be unsaleable shall be confiscated and destroyed or turned over to the house of correction for disposal.

Chi. Mun. Code § 2-84-160. Unlike LEDPA, the Ordinance refers to property seized during arrests. In effect, it provides that if the property is not claimed within thirty days of the termination of the court proceedings, or thirty days of the arrest if there are no court

proceedings, the CPD may retain the money for its own use. Thus, the Ordinance potentially provides the City with authority to retain possession of money if it goes unclaimed for over thirty days.

However, in light of factual issues regarding adequate notice and an effective remedy afforded the arrestee for return of his money, discussed above, and the related question of reasonableness of the thirty-day deadline, as well as factual questions of compliance by the City with the conditions preceding forfeiture, summary judgment of the restitution claims is not appropriate.

## CONCLUSION

For the foregoing reasons, all motions for summary judgment are denied.

Dated: 9-3-09

JOHN W. DARRAH
United States District Court Judge