IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLA M. KENNEDY, *et al.*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> CITY OF CHICAGO, *et al.*, <br><br> *Defendants.* | No. 06 C 4914 <br><br> Judge John W. Darrah |

## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs through their attorneys, Thomas Peters, Kevin Peters, and Mary DeSloover, request preliminary approval of a class action settlement. In support of this Motion, Plaintiffs state:

### NATURE OF THE CLAIM AND PROCEDURAL HISTORY

1. Plaintiffs filed their Complaint on September 11, 2006. (Doc. No. 1). The Complaint was brought on behalf of two groups of plaintiffs with overlapping interests in cash that was seized and inventoried by Chicago police officers following non-narcotics arrests. One group consisted of state pensioners, who maintained that cash inventories that were not claimed within seven years must be deposited in a state pension fund in accordance with the Uniform Disposition of Unclaimed Property Act. (hereinafter

1

UDUPA). The other group of Plaintiffs maintained that they were the original owners of non-narcotics related cash seized and inventoried by Chicago police officers and that the seized cash must be returned to them.

2. The claims of the two groups are not in conflict. The pensioners agree that the original owners have the dominant claim and that the original owners' claims are not extinguished by the UDUPA. Only cash inventories that remain unclaimed for seven years are governed by the UDUPA. Even then, the pensioners agree that an original owner may file a claim at any time and, once such a claim is filed, the inventoried money must be returned to the original owner. However, if the original owner never files a claim, the cash must be transferred to the state pension fund in accordance with the UDUPA.

3. On September 14, 2006, Plaintiffs filed a Motion to Certify Class. (Doc. Nos. 8, 9). Plaintiffs sought class certification under Rule 23(b)(2) and 23(b)(3) for classes involving the original owners of the inventoried cash and a 23(b)(2) injunctive class for the pensioners. (Id.). On October 31, 2006, Plaintiffs filed a Memorandum in Support of Class Certification. (Doc. No. 20).

4. Defendants responded by filing a Motion to Dismiss. (Doc. No. 28). However, before the Court ruled on the Motion to Dismiss, Plaintiffs were granted leave to file an Amended Complaint, and the Motion to Certify Class Action was stricken without prejudice. (Doc. No. 70).

2

5.	Defendants again moved to dismiss, and that motion was fully briefed. On December 17, 2007, the Court granted, in part, Defendants' Motion to Dismiss. (Doc. Nos. 108, 109). Specifically, the Court granted the motion as to the pensioners' claims and as to the claims of original owners who were arrested for narcotics related offenses. The Court also granted the motion with respect to Takings Clause claims. (*Id.*). The Court denied the Motion to Dismiss as to all persons who had cash seized from them following a non-narcotics arrest.

6.	Plaintiffs then filed a Second Amended Complaint that conformed with the Court's ruling on the Motion to Dismiss. A renewed Motion to Certify Class was filed (Doc. Nos. 115-117) and, on July 10, 2008, the Court granted the Motion to Certify Class ( Doc. No. 150 ).

7.	A restitution class was certified and defined as all persons from whom money was seized by a Chicago police officer provided: (1) the cash was seized after September 11, 2001; (2) an inventory receipt was issued and the receipt was marked "Hold for investigation and\or evidence" and was not marked "Hold in Original Form" or "narcotics related" (3) any criminal charges that were filed when the cash was seized had been resolved; (4) no forfeiture action had been filed against the inventoried cash; and (5) the time for filing such a forfeiture action had expired. (Doc. No. 108, at 8).

8.	The Court also certified a due process class that had the same class definition as the restitution class, except the due process class commenced on December 13, 2004. (Id., at 13).

3

9. On September 3, 2008, Defendants filed a Motion for Summary Judgment. (Doc. Nos. 157-161). After several interim motions were filed, Defendants renewed their summary judgment motion on December 5, 2008. ( Doc. Nos. 177-179). In March 2009 Plaintiffs filed a cross motion for summary judgment, as well as their response to Defendants' motion. ( Doc. Nos. 191-196). The cross motions for summary judgment were taken under advisement for ruling. (Doc. Nos. 204 - 210). On September 3, 2009, all the motions for summary judgment were denied. (Doc. No 218, 219).

10. Defendants then filed a Motion to Modify the Class Definition (Doc. No. 222), which was granted on November 18, 2009. (Doc. No. 227). This Order set an end date of October 16, 2009, for the due process and the restitution classes. The new end date was based on a change in the Defendants' policy. As of October 16, 2009, the inventory receipt, that is issued by Defendants to all arrestees from whom cash is seized, described in reasonable detail how inventoried money can be retrieved from the CPD.

## THE SETTLEMENT AGREEMENT

11. As part of the Stipulation and Agreement of Settlement ("Settlement Agreement" attached hereto as Exhibit 1), Defendants agree to continue to issue a notice providing information, such as that contained in Exhibit 2 attached hereto, when cash is inventoried by a Chicago police officer. As previously noted, Defendants began issuing detailed instructions on October 16, 2009, and the Settlement Agreement (Exhibit 1) continues that policy.

4

12. In addition to the revised inventory notice, the Settlement Agreement implements a major change in the City's inventory policy. (Exhibit 1, at Article V). The Settlement Agreement requires the City or the Chicago Police Department to secure a court order, if inventoried cash that was seized without a warrant will be retained for more than 30 days. (Exhibit 1, Section 5.2). The Settlement Agreement also requires the City to adopt a processes for claiming or returning all inventoried cash within 90 days of the original seizure, unless the cash was seized subject to a search warrant or a court order has been secured allowing the money to be retained. To facilitate the return of inventoried cash, the City is required to notify all persons, from whom cash was seized and inventoried in non-narcotics cases, that the inventoried cash can be retrieved from the Chicago Police Department's Evidence and Received Property Section (ERPS). The notice will specifically inform owners that the cash can be retrieved from ERPS, commencing no later than on the 31st day following the inventory of cash. (Id., at Section 5.3). In the event the owner does not retrieve the inventoried cash within 90 days of the inventory, a check in the amount of the inventoried cash, minus mailing costs, will be mailed to the owner's last known address. Thus, owners can retrieve their cash from ERPS between the 31st and the 90th days following the issuance of the inventory receipt. After the 90th day, any cash that was not retrieved from ERPS will be mailed to the owner's last known address. This new policy applies to future inventories, but the Settlement Agreement also provides a remedy for past cash inventories.

5

13. The City also agrees to allow the owners of the inventoried cash that was seized from September 11, 2001, to and including October 16, 2009, to claim their money. The parties agree that the amount of inventoried money during that time span is approximately $2.75 million dollars. (Exhibit 1, Article III). A claims fund in that amount shall be created and all timely filed claims will be paid from that Settlement Fund.

14. To maximize the claims rate, every class member will receive personal notice and a claim form by United States mail to their last known address with a postage pre-paid return envelope. (Attached hereto as Exhibit 3 is a copy of the proposed personal notice and attached hereto as Exhibit 4 is the proposed claim form). In addition, notice by publication will be made in four local papers, thereby enhancing the likelihood that class members will receive notice of their right to restitution. (Attached hereto as Exhibit 5 is a copy of the proposed newspaper notice). In addition, it is proposed that the Claims Administrator will seek to obtain alternative addresses for any of the personal notices returned as undeliverable. The Settlement Agreement also provides for a second reminder notice 75 days after the initial personal notice to any potential class member who has as of then not yet filed a claim. (Attached as Exhibit No. 6 is the proposed reminder notice.)

15. Subject to this Court's approval, the Settlement Agreement proposes the following notice and claims process schedule leading to the Final Approval Hearing:

    a. Personal Notices issued 30 days after Preliminary Approval.

    b. Undeliverable Personal Notices attempted redelivery within 60 days of

6

Preliminary Approval

    c.    Summary Notices published 3 times starting 30 days following preliminary approval;

    d.    Reminder notices issued to Class Members who have failed to respond within 75 days after preliminary approval;

    e.    Claims, opt out, and objection deadline December 15, 2010;

    f.    Final Approval Hearing at the Court's convenience in early 2011.

    16.    One aspect of the settlement to requires a ruling from the Court at the Final Approval hearing, in addition to the required Federal Rule of Civil Procedure 23 determinations. The issue is what is to become of any unclaimed money that remains in the Settlement Fund after the payment of claims, attorneys' fees, and the costs of administration of the settlement. (Exhibit 1 at Section 4.6.). Plaintiffs maintain the unclaimed funds are governed by the Uniform Disposition of Unclaimed Property Act. Thus, according to Plaintiffs, all of the money that remains in the Settlement Fund must be transferred to the Treasurer of the State of Illinois pursuant to the UDUPA. Defendants, on the other hand, maintain that any unclaimed funds should revert to the City of Chicago pursuant to applicable law. The issue, therefore, is where, as a matter of law, any remaining unclaimed cash should go. To inform the Court on this issue, the parties have proposed in the Settlement Agreement that they file cross briefs on the issues within 35 days of preliminary approval and response briefs 35 days thereafter.

17. Finally, the Settlement Agreement allows for payment of attorneys fees and expenses which Plaintiffs' Counsel intends to request in the amount of $900,000 dollars. That figure represents slightly less than one third of the Settlement Fund, a percentage that is commonly awarded in complex, contingent fee cases like this one. However, in this case, the benefit to the class actually is much larger than the $2.75 million dollar Settlement Fund, so the requested fees are actually less than the typical 33% rate. As a result of the policy changes that the Settlement Agreement requires, in the future persons who have non-narcotics related money inventoried by the Chicago Police Department will receive a notice of the procedures to reclaim their money. The new notice and the new procedures should result in the prompt return of nearly all inventoried cash in a timely manner to the original owners. Instead of an inventory policy that resulted in hundreds of thousands of dollars going unclaimed every year, the new inventory policy should result in the return of substantially all such money. Thus, over the course of the next several years, the change in inventory policy will result in the return of millions of dollars that, under the old inventory system, would have gone unclaimed. Viewed from that perspective, Plaintiffs' counsel are requesting far less than one third of the actual financial benefit to the class.

### THE SETTLEMENT WAS REACHED IN GOOD FAITH

18. The parties are well-aware of the uncertainties that come with any litigation and with the delay inherent in all litigation. These uncertainties and inevitable delays were factored into the proposed settlement. Thus, in every respect the proposed

settlement is within the range of fair settlements and deserves preliminary approval by this Honorable Court. See *Armstrong v. Board of Schol Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 19080), overruled on other grounds, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1988); *Kessler v. American Resorts*, 2007 WL. 4105204 (N.D. Ill. 2007).

19. Subject to the Court's review and approval, the parties also have agreed on a form of Preliminary Approval Order and a copy of that proposed Order is attached as Exhibit 7.

Wherefore, Plaintiff prays the Court will approve, preliminarily, the Settlement Agreement as described herein.

Respectfully Submitted,

s/ Thomas Peters
Thomas Peters
Kevin Peters
Mary DeSloover
Attorneys for Plaintiff
407 S. Dearborn St., Suite 1675
Chicago, IL 60605
(312) 697-0022