IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLA M. KENNEDY, et al. ) | |
| ) | |
| Plaintiffs, ) | No. 06 C 4914 |
| vs. ) | |
| ) | |
| CITY OF CHICAGO, et al. ) | Honorable John W. Darrah, |
| ) | Presiding |
| Defendants. ) | |

## PLAINTIFFS' MOTION TO SET ASIDE UNCLAIMED SETTLEMENT FUNDS FOR TRANSFER TO THE ILLINOIS STATE PENSION FUND

Plaintiffs through their attorneys, Thomas Peters, Kevin Peters, and Mary DeSloover, hereby respectfully request that the Court order that any settlement funds that remain unclaimed, after payment of all claims, fees, and expenses, shall be held for transfer to the Illinois state pension fund in accordance with the Uniform Disposition of Unclaimed Property Act ("UDUPA"). 765 ILCS 1025/1, *et seq.* (West 2004). In support of this Motion, Plaintiffs state:

### INTRODUCTION

This class action consists of two certified classes: (1) the Due Process Class, and (2) the Restitution Class. (Doc. No. 150 at 13). The parties, after lengthy, arms-length negotiations reached a settlement that calls for restitution for all class members who file

timely claims. On August 25, 2010, the Court entered an order preliminarily approving the settlement. (Doc. No. 254).

According to the Settlement Agreement, a Settlement Fund in the amount of $2.75M will be established from cash that was seized from class members when they were arrested. Thus, the Settlement Fund consists of money that, when first seized, unquestionably belonged to class members. From that fund, every class member who files a timely claim will receive complete restitution – all of the money that was seized from him will be returned to him.

Not every class member, however, will file a timely claim. The parties anticipate that after all claims, fees, and expenses are paid out of the Settlement Fund, some money will remain. *See* Tiffaney Allen, Principal Consultant, Rust Consulting, Inc., *Anticipating Claims Filing Rates in Class Action Settlements*, CLASS ACTION PERSPECTIVES (Nov. 2008) (stating claims-filing rate for property-related settlements generally range from 2 to 20 percent). What should happen to the remaining, unclaimed settlement money is disputed by the parties.

Plaintiffs maintain that class members retain their ownership interest in the money, but that money which remains unclaimed seven years after it was first seized and inventoried must be transferred to the Illinois pension fund in accordance with the UDUPA. *See Canel v. Topinka*, 212 Ill.2d 311, 331, 818 N.E.2d 311, 324-25(Ill. 2004); 765 ILCS 1025/1, *et seq.* (West 2004). The UDUPA requires municipalities to transfer any unclaimed monies in their possession to the state Treasurer for deposit in a state

pension plan, once the money has gone unclaimed for seven years. *See Cwik v. Giannoulias*, 237 Ill.2d 409, 411, 930 N.E.2d 990, 991-92 (Ill. 2010) (citing 765 ILCS 1025/8 (West 2004)). For the first seven years, the municipality is the custodian, but not the owner. *See Canel*, 212 Ill.2d at 324, 818 N.E.2d at 321; *Commonwealth Edison Co. v. Vega*, 174 F.3d 870, 872 (7th Cir. 1999) (noting that "[t[he State does not acquire title to the property. It is merely a custodian."). After seven years, the municipality must relinquish custody to the state Treasurer, who becomes the new custodian with a statutory mandate to deposit the money in a state pension plan. *See Alvarez v. Pappas*, 229 Ill.2d 217, 226, 890 N.E.2d 434, 440 (Ill. 2008). Even then, however, the money is not forfeited, and the original owner (here the class member/arrestee) never relinquishes his ownership interest. *Canel*, 212 Ill.2d at 327, 818 N.E.2d at 322-23. "Ownership of the property remains with the owner and never vests in the state." *Alvarez*, 229 Ill.2d at 226. Because the class member from whom the money was seized never relinquishes his ownership interest, transfer of the unclaimed settlement money to the pension fund pursuant to the UDUPA does not result in a due process violation *Id.*

Defendants, on the other hand, assert that the unclaimed money in the Settlement Fund is forfeited to the City, provided the Superintendent of Police deems the money of use to the City, which, of course, he is sure to do. Defendants make this assertion based on Municipal Ordinance 2-84-160 (Ex. 1), which, as Defendants mistakenly construe it, authorizes the Superintendent of Police to unilaterally decide whether the City wants to declare property forfeited, without notice or a hearing.

3

The Ordinance, however, does not apply to the cash inventories that are at issue here for two reasons. First, the Due Process Clause demands notice and a hearing before private property is forfeited to the government. *See United States v. Von Neumann*, 474 U.S. 242, 106 S.Ct. 610, 88 L.Ed.2d 587 (1986); *United States v. $8,850*, 461 U.S. 555, 563, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). Since the Ordinance, as mistakenly construed by Defendants, does not provide the constitutionally required notice and hearing, the Ordinance cannot be applied to the unclaimed Settlement money. Second, read fairly, the Ordinance was not intended to apply to cash inventories because money is not "salable" property, and only "salable" property is governed by the City's Ordinance.

Resolution of this issue—whether the Ordinance or the UDUPA applies to unclaimed settlement funds—is essential to a final order. The parties anticipate that payment of all timely filed class member claims, as well as all fees and costs, will not fully deplete the Settlement Fund. Some money will remain in the Settlement Fund after all required payments are made, raising the issue of what should happen with the remaining money. Are the unclaimed funds subject to transfer to the state Treasurer as required by the UDUPA or do those funds revert to the City by forfeiture? Because the Ordinance (1) cannot be constitutionally applied to the unclaimed settlement funds, and (2) never was intended to apply to inventoried cash, the unclaimed settlement funds are subject to the UDUPA.

In the following Sections, Plaintiffs first describe the origins of the Settlement Fund. Next, Plaintiffs prove that all of the money in the Settlement Fund came from

class members who retained a property interest in it and thus this money is owned by the class, despite the City's convoluted interpretation of the Ordinance and the Due Process Clause. Plaintiffs then prove that the money remaining in the Settlement Fund, after payment of all timely filed claims, all fees, and all costs, is governed by the UDUPA. That being the case, the remaining funds eventually must be transferred to the state pension fund. *See Cwik*, 237 Ill.2d at 411, 930 N.E.2d at 991-92. The transferred money then may be used by the state's grossly underfunded pension plan[1], but the class members from whom the money was seized never forfeit their ownership interests. *Alvarez*, 229 Ill.2d at 226, 890 N.E.2d at 440. The pension plan is allowed to use the transferred money because it is highly unlikely that the original owner (*i.e.*, a class member) will file a claim seven years after the City first seized the money. *Canel*, 212 Ill.2d at 327, 818 N.E.2d at 322-23. But, in the event that a few such claims are filed, the UDUPA sets aside more than enough money to pay those claims. *See Cwik*, 237 Ill.2d at 411, 930 N.E.2d at 992. In that respect, the UDUPA protects the rights of the original owner while pragmatically allowing the money to be used to pay the pensions of state employees, whose pension funds are in desperate need of every dime they can collect. *See* B.J. Lutz, *Illinois Pension Fund Worst in Nation*, NBC CHICAGO (Feb. 18, 2010).

---

[1] Illinois' pension plan is the most grossly underfunded in the nation. *See* B.J. Lutz, *Illinois Pension Fund Worst in Nation*, NBC CHICAGO (Feb. 18, 2010), http://www.nbcchicago.com/news/local-beat/illinois-pension-liability-84732772.html (last visited Oct. 18, 2010).

## I. THE SETTLEMENT FUND CONSISTS OF CLASS MEMBER MONEY.

During the time period covered by the restitution class, the City's inventory policy required police officers to issue an inventory receipt to arrestees when an officer seized cash from an arrestee. The seized cash was then deposited in a City of Chicago bank account. Many arrestees were unable to reclaim their money because: (a) the City's inventory receipts were misleading, and (b) the City's inventory return policy was so cumbersome and costly that thousands of arrestees were deterred from pursuing their claims, particularly when the amount seized was modest. *Gates v. City of Chicago*, No. 08-1455, 2010 WL 3733643 (7th Cir. Sept. 27, 2010). As a consequence of the City's policy, millions of dollars that the City seized from arrestees between September 11, 2001 and October 16, 2009 were not returned to those arrestees. *Id.* That unreturned money led to this suit, and that unreturned money constitutes one hundred percent (100%) of the Settlement Fund. The City has not put one dime into the Settlement Fund, and the City's Ordinance cannot be constitutionally applied to any of the money in the Settlement Fund. Therefore, this Honorable Court should enter an order that requires the City to transfer any money remaining in the Settlement Fund, after payment of timely claims, attorneys' fees, and costs, to the state pension fund in accordance with the UDUPA.

## II. THE ORDINANCE DOES NOT PROVIDE FOR DUE PROCEES AND, THEREFORE, DOES NOT APPLY TO THE UNCLAIMED SETTLEMENT MONEY.

The Court must (a) construe the Ordinance in a manner that avoids constitutional problems, and (b) interpret the Ordinance so that its plain language is given its intended meaning. *See Milavets, Gallop & Milavetz, P.A. v. United States*, 130 S.Ct. 1324, 1333-34 (2010) (stating the rule of constitutional avoidance); *see also United States v. Ye*, 588 F.3d 411, 414 (7th Cir. 2009) (stating that statutory interpretation begins with the plain language of the statute). With that in mind, the rule of constitutional avoidance demands that the Court choose an interpretation of the Ordinance that avoids constitutional problems. *See Milavets*, 130 S.Ct. at 1333-34; *Northwest Austin Mun. Utility v. Holder*, 129 S. Ct. 2504, 2514 (2009). This is not an overly burdensome exercise since the Ordinance never was intended to apply to cash inventories.

Properly understood, the Ordinance does not vest the Superintendent with the power to unconstitutionally declare cash forfeited without notice or a hearing. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *United States v. $8,850*, 461 U.S. 555, 562 n. 12 (1983); *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972); *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965); *Covey v. Town of Somers*, 351 U.S. 141, 146 (1956); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950) (all reiterating the well-established due process rule requiring notice and a hearing before the government extinguishes a property interest). A straightforward interpretation of the Ordinance

7

proves that it does not apply to cash inventories, and that understanding of the Ordinance eliminates the due process issue created by Defendants' strained and self-serving interpretation.

According to Defendants, the Ordinance allows the Superintendent of Police to "deem" property of use to the City and, once the Superintendent exercises his unchecked "deeming" powers, the property is forfeited to the City without notice or a hearing. The City's interpretation of the Ordinance cannot be correct since "[t]he root requirement of the Due Process Clause" is that "an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill,* 470 U.S. at 542. The government cannot forfeit private property without notice to the property owner of its intent to seek a forfeiture, followed by an opportunity for the owner to oppose the forfeiture at a hearing before a neutral decision maker. *See Von Neumann,* 474 U.S. 242; *$8,850,* 461 U.S. at 563. "[I]t has become a truism that '*some* form of hearing' is required before the owner is [permanently] deprived of a protected property interest." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433 (1982). Since the City's idiosyncratic interpretation of the Ordinance does not provide for notice and a hearing, that construction of the Ordinance must be rejected. *Milavets,* 130 S.Ct. at 1333-34.

### III. THE ORDINANCE DOES NOT APPLY TO CASH INVENTORIES.

Defendants strain to expand the plain meaning of the Ordinance to justify their "right" to retain unclaimed settlement funds. But the Ordinance never was intended to cover cash inventories and, as previously established, Defendants' self-serving

8

interpretation of the Ordinance violates due process. *See James Daniel Good Real Prop.*, 510 U.S. at 62. A common sense reading of the Ordinance proves that the Ordinance only applies to "salable" property and, even as to salable property, the Ordinance requires notice of an auction and an opportunity to claim the property, before the Superintendent may summarily "deem" the property of use to the City.

The Ordinance begins by describing a process for the recovery of property that was "seized or otherwise taken possession of by the police department," provided the property was not "claimed by the rightful owner thereof ... within 30 days from the final disposition of the court proceedings ... in connection with which such property was seized." CHICAGO, IL., MUN. CODE ch. 2-84, § 160 (2010) (Ex. 1). Thus, the Ordinance only applies to inventoried property that remains unclaimed for thirty days following the final disposition of the criminal charges. The Ordinance then provides that any "such" property also must be "salable" at a "public auction ... ." *Id.* Inventoried cash is not "salable" at an auction, a point this Court has already resolved. (Doc. No. 218 at 9) (Order on Cross-Motions for Summary Judgment) ("an auction of money does not make sense").

Leaving that aside, the Ordinance goes on to describe a notice and auction process that must be followed as to all "such" property. CHICAGO, IL., MUN. CODE ch. 2-84, § 160 (2010). The Ordinance does not allow for any exceptions to the notice and publication process, and the Ordinance limits its application to "salable" property by using the word "such" eight times in the first three sentences. *Id.* Every time "such

property" is used or referenced in the first three sentences of the Ordinance, the property that is described: (1) is in the possession of the CPD; (2) has gone unclaimed for thirty or more days following the conclusion of the criminal proceedings; (3) is salable at a public auction; and (4) has been the subject of published notice of the City's intent to sell the property at an auction. *Id.* Since cash inventories are not "salable" and the City concedes that it never has held an auction of cash inventories, the "such" property described in the first three sentences of this Ordinance does not include inventoried cash.

After imposing these restrictions on the property that is governed by the Ordinance, the text provides that "[n]o member of said department [the CPD] ... shall participate in the bidding for, or purchase of *such unclaimed property*." CHICAGO, IL., MUN. CODE ch. 2-84, § 160 (2010) (emphasis added). Use of the word "such" in this sentence necessarily directs the reader to the type or category of property that was described in the three preceding sentences. *See United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006) (holding that when interpreting a statute or ordinance, courts consider "the specific language at issue, the context in which the language is used, and the broader context of the statute as a whole"); *see also United States v. Zendeli* (7th Cir. 1999) (citing *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 116 L.Ed. 2d 578 (1991)) (holding that statutes must be "read as a whole, since the meaning of statutory language, plain or not, depends on context"). The only property that was described before this reference to "such" property is property that was in police custody and subject to sale at a public auction following notice of the auction. Thus, the Ordinance prohibits CPD personnel

from bidding on property that is subject to sale at an auction. No other property is even arguably covered by the term "such unclaimed property."

Defendants, nonetheless, insist that the City may forfeit cash inventories based on the next sentence in the Ordinance, which states "[p]rovided, that any of *such unclaimed* property, if deemed by the superintendent of police to be of use to any city department, may be retained for use of such department." *Id.* (emphasis added). Again the Ordinance refers to "such unclaimed" property. When an ordinance uses the same phrase more than once in its text, the phrase is intended to have the same meaning each time it is used. *See Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 990 (7th Cir. 1999). "[I]dentical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995).

Each time the Ordinance refers to "such" property or "such unclaimed" property, the Court must examine the preceding text to determine what property is encompassed by the word "such." In this Ordinance, "such" always refers to the same property. "Such" property always means property that remains unclaimed in CPD custody for more than thirty days and is "salable" at an "auction" following notice of the auction. Defendants admit they never publish notice of an intent to forfeit cash inventories (Doc. No. 194, Ex. 5, at No. 15), and this Honorable Court has already held that cash is not "salable" property. (Doc. No. 218 at 9). The Ordinance, therefore, does not apply to cash inventories. The text of the Ordinance excludes cash inventories because cash is not salable at an auction. Understood in that way, the Ordinance also avoids any due process

11

challenge, since only non-cash property that goes unclaimed, following notice and an auction, may be deemed of use to the City by the Superintendent. Therefore, the Ordinance does not apply to the unclaimed settlement money and that money is subject to transfer to the state Treasurer in accordance with the UDUPA.

## IV. FINAL DISPOSITION OF THE UNCLAIMED SETTLEMENT MONEY

The final consideration before the Court is the mechanics of the transfer from the City to the pension fund. Because the UDUPA applies to cash that goes unclaimed for seven years, (765 ILCS 1025/8), not all of the unclaimed settlement money is subject to immediate transfer. The restitution class dates back to 2001. Only the unclaimed settlement money that was seized between 2001 and January 2004 will have gone unclaimed for seven years, as of the date of the final approval hearing (January 2011) before this Honorable Court. That being the case, only the unclaimed settlement money that was seized between 2001 and January 2004 must be transferred to the pension fund immediately. *See* 765 ILCS 1025/8.

The parties can easily identify that money since they have a comprehensive list of all class members and the dates and amounts of cash that were seized. Once all the settlement claims are collected and reviewed, every class member whose money was seized before January 2004 can be cross-checked against the list of timely filed settlement claims. The remaining unclaimed settlement money that was seized before January 2004 is subject to immediate transfer to the state pension fund per the UDUPA.

As previously noted, class members whose money is immediately transferred to the pension fund do not forfeit their ownership interests. *Canel*, 212 Ill.2d at 327, 818 N.E.2d at 322-23. They retain their ownership rights, and every year the Treasurer must publish notice that the state has their money and that rightful owners still can claim it. 765 ILCS 1025/12. So, every year the class member has another opportunity to reclaim his money. But until he does, the money goes to good use—it is deposited in a pension fund that badly needs every available penny.

As for the unclaimed settlement money that has not been in the City's possession for seven years as of the final approval hearing before this Honorable Court, the City retains its custodial status over this money. *Canel*, 212 Ill.2d at 327, 818 N.E.2d at 322-23. But the City never becomes the owner of the money. *Id*. The City could put this money to good use by depositing it in an interest earning account, rather than letting a bank use the money without paying interest on it, as is the City's current practice. However, every year the City must turnover to the state Treasurer, all the money that has gone unclaimed for seven years. 765 ILCS 1025/11. Thus, in January 2012, the City must, as every other municipality in the State already does, review its records and identify the unclaimed funds that were seized seven years earlier (before January 2005). Any unclaimed settlement that was seized seven years earlier (2005 or sooner) must be transferred to the state Treasurer in accordance with the UDUPA. And that process must be repeated every year until all of the unclaimed settlement money has either been returned to the original owner (*i.e.*, a class member) or transferred to the state Treasurer.

This process will not require the Court to retain jurisdiction or to monitor the annual transfers. Once the Court orders the City to transfer the unclaimed settlement money to the Treasurer per the UDUPA, the City is obligated to comply with the UDUPA. The annual transfers will be no different than the cash transfers that other municipalities already make, and the process for the transfer is concisely and unambiguously described in the UDUPA.

## CONCLUSION

For the foregoing reasons, Plaintiffs pray the Court will set aside any unclaimed money in the Settlement Fund, after the payment of all claims, fees, and expenses, to be transferred to the Illinois state pension fund as required by the Uniform Disposition of Unclaimed Property Act.

Respectfully Submitted,

 s/ Thomas Peters
Thomas Peters
Kevin Peters
Mary DeSloover
Attorneys for Plaintiffs
53 W. Jackson Blvd., Suite 1615
Chicago, IL 60604
(312) 697-0022