IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLA KENNEDY, *et al.*, <br><br> *Plaintiffs,* <br><br> *vs.* <br><br> CITY OF CHICAGO, *et al.*, <br><br> *Defendants.* | No. 06 C 4914 <br><br> Judge John W. Darrah |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THE RETURN OF UNCLAIMED CLASS SETTLEMENT FUNDS**

Defendants the City of Chicago and Superintendent Jody Weis (collectively the "City"), by and through their undersigned counsel, hereby submit this memorandum in support of the return of unclaimed class settlement funds.

**INTRODUCTION**

The City entered into the settlement in this case of its own volition and absent a finding of liability. Pursuant to the settlement, the City has designated approximately $2.8 million as a "Settlement Fund" to pay the valid claims of the class, as well as other expenses relating to the administration of the settlement. The City seeks the return of that portion of the Settlement Fund which remains unclaimed after all valid class member claims have been paid and all other payments required are made.

The Court should exercise its discretion to award the unclaimed Settlement Fund monies to the City because the class members will be fully compensated; the City has an equitable interest in the unclaimed funds; and the City's conduct warrants a return of the funds. Moreover, the Plaintiffs' proposed distribution of the funds to the State of Illinois does not benefit the class of arrestees and attempts to provide a remedy to State pensioners who the Court has already

ruled have no standing in this case. Finally, the balance of the equities favors distribution of the unclaimed funds to the City to offset the costs of the settlement and further promote the underling interests of the class.

## STATEMENT OF FACTS

### A. CASE BACKGROUND

On September 11, 2006, Plaintiffs filed this class action against the City challenging the Chicago Police Department's ("CPD") notice and procedures relating to the return of money inventoried and held in connection with arrests for non-narcotics related offenses. (*See* Complaint, Docket No. 1.) The Court certified Due Process and Restitution Classes of non-narcotics arrestees who had money seized in connection with their arrest by a Chicago Police Officer; whose money was held for investigation and/or evidence, deposited, and not subject to forfeiture; and whose criminal charges have been resolved. *See Kennedy v. City of Chicago*, No. 06 C 4914, 2008 WL 4889106, at *7 (N.D. Ill. July 10, 2008) (Docket No. 150). The Due Process Class covered individuals arrested from December 14, 2004 (when CPD adopted the property inventory notice at issue) to October 16, 2009 (when CPD revised the property inventory notice). Similarly, the Restitution Class covered individuals arrested from September 11, 2001 (statute of limitations based on filing date of complaint) to October 16, 2009. (See 11/20/09 Agreed Order, Docket No. 227.)

The original complaint included a claim by State of Illinois pensioners brought under the Uniform Disposition of Unclaimed Property Act, 765 ILCS 1025/0.05, *et seq*. ("UDUPA"). (Amended Complaint, Docket No. 62.) UDUPA provides for the transfer of money unclaimed after seven years to the State of Illinois Treasurer which money may then be deposited in a state pension fund. (*See id.*) The Court dismissed the pensioners' claim with prejudice for lack of standing, finding that UDUPA does not provide a private right of action and the right to enforce

2

the statute resides exclusively with the State Treasurer. *See Kennedy v. City of Chicago,* No. 06 C 4914, 2007 WL 4553040, *3 (N.D. Ill. Dec. 18, 2007) (Docket Nos. 110, 111).

On September 3, 2009, after extensive oral and written discovery, the Court denied the parties' cross-motions for summary judgment, finding disputed issues of material fact as to notice and procedure precluded judgment as a matter of law in favor of either party. *Kennedy v. City of Chicago*, No. 06 C 4914, 2009 WL 2872907, at *7 (N.D. Ill. Sept. 03, 2009) (Docket No. 218).

### B. CLASS ACTION SETTLEMENT

On August 25, 2010, this Court entered an order preliminarily approving the proposed settlement in this case. (*See* 8/25/10 Preliminary Approval Order, Docket No. 254). The Settlement Agreement entered into by the parties and preliminarily approved by the Court provided for a settlement fund in the amount of $2,749,728.63 (the "Settlement Fund"). (Settlement Agreement, Docket 251-1; Section 3.1.) The Settlement Agreement provided for allocation of the Settlement Fund as follows: (1) payment of Administrative Expenses not to exceed $95,000.00; (2) payment of $1,000.00 each to the Class Representatives; (3) payment to the Class Members for all of the valid claims; and (4) payment of Class Counsel's attorneys' fees as awarded by the Court. (*Id.* at Sections 4.1-4.4.)[1]

In the event a portion of the Settlement Fund remains unallocated after those payments, the parties agree to submit the issue of disposition of such funds to the Court:

> If, after the payments provided for in Section 4.1 – Section 4.4, a portion of the Settlement Fund remains unallocated, the Parties disagree as to the proper disposition of such funds. Thus, the Parties have agreed to have the Court determine the appropriate recipient of any such unallocated funds. Defendants contend that

---

[1] Unless otherwise defined herein, capitalized terms have the meanings afforded them in the Settlement Agreement. (Settlement Agreement, Docket No. 251-1, Article I.)

3

>    the unallocated funds may be retained by the City pursuant to applicable law. Plaintiffs contend that the unallocated funds should be transferred to the Treasurer of the State of Illinois pursuant to UDUPA.

(*Id.* at 4.6.)

For the following reasons, the Court should exercise its discretion to return the unclaimed portion of the Settlement Fund to the City.

## ARGUMENT

### A. THE UNCLAIMED SETTLEMENT FUNDS SHOULD BE RETURNED TO THE CITY BECAUSE THE CITY HAS AN EQUITABLE INTEREST IN THE MONIES.

When, as in this case, the parties to a class action settlement have not otherwise agreed on the recipient of the unclaimed class settlement funds, distribution of the funds is within the court's discretion. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 230 (S.D. Ill. 2001); *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir. 1984); *MBA v. World Airways, Inc.*, 369 Fed. App. 194, 197 (2d Cir. 2010); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F. 2d 1301, 1307 (9th Cir. 1990).

In *Wilson v. Southwest Airlines*, 880 F.2d 807 (5th Cir. 1989), where the parties left the issue of disposition of the unclaimed settlement funds to judicial discretion, the court held that the defendant had an equitable ownership interest in the unclaimed funds. *See id.* at 813. In reaching its decision, the court considered the following three factors: (1) whether class members who presented their claims received full compensation; (2) the nature of the parties' equitable interests; and (3) the nature of the defendant's conduct. *See id.* at 812-15.

In *Wilson*, after a trial focusing solely on liability, the district court found that the defendant Southwest violated Title VII of the Civil Rights Act by having a policy of hiring only female flight attendants. *Id.* at 809. Prior to a trial on damages, the plaintiff and Southwest entered into a settlement that established a $1 million fund for back pay to male flight attendant

4

applicants. *Id.* at 810. The settlement provided that "[a]ny residual fund may be utilized, after all payment of backpay, as the Court directs." *Id.* The district court awarded the residual fund to a charity under the *cy pres* doctrine. *Id.*

On appeal, the court held that the district court abused its discretion in awarding the residual fund under *cy pres*. *Wilson.* 880 F.2d. at 816.[2] The court first noted that the purpose of the class settlement was achieved: "Every *bona fide* class member who came forward with a valid claim was paid his full measure of compensation under the consent decree." *Id.* at 812-813 (emphasis in original). Next, the court noted that Southwest "turned over its money in the clear and reasonable expectation that the money was required for the specific purpose of compensating the class," and therefore "its equitable claim to any money remaining after the accomplishment of that purpose is compelling." *Id.* at 813. Finally, the court noted that the policy of Title VII is compensatory in nature, not punitive, and Southwest in good faith believed its policy to be legal and defended such policy without equivocation. *Id.* at 815. As such, Southwest's conduct did not diminish its equitable rights. *Id.*

Here, the parties have similarly agreed to submit to this Court's discretion the issue of the proper distribution of the unclaimed Settlement Fund. (Settlement Agreement, Docket No. 251-1, Section 4.6.) In this case, the City meets all three of the *Wilson* factors, and, as such, the unclaimed funds should properly revert to the City.

---

[2] The parties in *Wilson* entered into another settlement agreement subsequent to the district court's *cy pres* charity award. *Id.* at 809. The Fifth Circuit, however, prior to considering such settlement, entertained the question of whether the district court abused its discretion in awarding the residual amount to the charity. *Id.* at 811. The subsequent settlement agreement, which was approved, returned most of the unclaimed funds to the defendant.

5

### 1. Class Members Who Present Valid Claims Will Receive Full Compensation.

The City agreed to compensate in full the class members who submit valid claims. Through the Settlement Agreement, the parties have established a claims process providing for claims administration through an experienced and reputable Claims Administrator; notices have been individually mailed to the Class Members and published in four local papers; and claims, which must be submitted by December 15, 2010, are already being processed by the Claims Administrator. (Settlement Agreement, Docket No. 251-1, Article VI, X.) As such, the City intends that the Settlement Agreement fully compensate class members who submit valid claims.

### 2. The City Has An Equitable Interest In The Unclaimed Settlement Fund.

The City has an equitable claim to the settlement funds which remain after the class has been compensated and all other class administration expenses and attorneys' fees have been paid. In a private class action, a defendant should not be obligated to pay more than the amount claimed and "unclaimed portions of a class action fund may properly be returned to the defendant." *See Wilson*, 880 F.2d at 815; *MBA*, 369 Fed. App. at 197.

Plaintiffs' litigation includes Section 1983 and common law restitution claims. Section 1983 is a statute which, similar to Title VII in *Wilson,* is only compensatory in nature. *See Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 310 (1986) ("To the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it was meant to establish a detriment more formidable than that inherent in the award of compensatory damages"). Moreover, the City, as well as Superintendent Weis, acting in his official capacity, are immune from punitive damages under Section 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (immunity from punitive damages for local government and its public officials is compatible with both the purposes of § 1983 and

general principles of public policy); *Gable v. Smit*, 1989 WL 157991, *1 (N.D. Ill. Dec. 14, 1989). Similarly, under Illinois law, restitution is accomplished by the return of property to its owner, without more, and, as such, restitution is by its nature a compensatory equitable remedy, and not punitive. *See King v. First Capital Fin. Servs. Corp.*, 215 Ill.2d 1, 828 N.E.2d 1155, 1174 (2005).

Because a defendant should not be obligated to pay more than the amount claimed, depriving the City of more funds than those which are necessary to compensate class members who submitted valid claims would be punitive, and therefore prohibited under Section 1983 and common law restitution. Moreover, equity does not support punishing the City by confiscating unclaimed settlement funds, where the City has, of its own volition and absent a finding of liability, entered into the Settlement Agreement and fully compensated the class. *See Sec. Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1966) ("federal courts naturally favor the settlement of class action litigation"). Therefore, the City has an equitable claim to unclaimed settlement funds after class members who submit valid claims have been compensated.

### 3. The City's Conduct Warrants Return Of The Unclaimed Settlement Fund.

There has been no judgment against the City in this case, and the City has expressly denied any liability in the Settlement Agreement. (Settlement Agreement, Docket No. 251-1 at p.4, Article XV.) The City contends that its notices and policies regarding inventoried money were constitutional, and has unequivocally defended them in this four year litigation.[3] Moreover,

---

[3] In support of its Motion for Summary Judgment, the City ardently argued its entitlement to inventoried money which remained unclaimed after a certain period of time, citing applicable law, including City Ordinance § 2-84-160 (the "Ordinance") and the Law Enforcement Disposition of Property Act, 765 ILCS 1030/1, *et seq*. ("LEDPA"). (*See* City's Memo. in Supp. of Summ. J., Docket No. 177; City's Reply in Supp. of Summ. J., Docket No. 204, fully incorporated by reference herein.) Although the Court rejected the applicability of LEDPA to the money at issue in this case, it did recognize that "the Ordinance potentially provides the City with authority to retain possession of money if it goes unclaimed for over thirty days." (*See* 9/3/09 Memorandum Opinion and Order, Docket No. 218, p. 9-12.)

even prior to the settlement, CPD voluntarily revised the notice to the property owner on its property inventory to include additional instructions describing the process of reclaiming inventoried money, which the parties agreed satisfied Due Process. (*Id.* at Section 5.1.) In the Settlement Agreement, CPD agreed to further revise its procedures to provide for an automatic release of non-narcotics money held for investigation and/or evidence after thirty days, unless CPD or the State's Attorney obtains a court order or warrant to retain custody. (*Id.* at Article V; *see* detailed discussion of revised CPD procedure in Section C, *infra*.)

Accordingly, the City's conduct warrants return to it of the unclaimed Settlement Fund.

### B. THE UNCLAIMED SETTLEMENT FUND SHOULD BE RETURNED TO THE CITY BECAUSE THE PLAINTIFFS' PROPOSED REMEDY IS IMPROPER.

Plaintiffs seek a transfer of the unclaimed settlement funds to the Treasurer of the State of Illinois pursuant to UDUPA which would ultimately be deposited into a State pension fund. (*See* Settlement Agreement, Docket No. 251-1, Section 4.6.) Plaintiffs' proposed remedy is improper because it does not benefit the class of Arrestee Plaintiffs, but rather the Pensioner Plaintiffs who are already foreclosed from seeking a remedy in this litigation. *See Kennedy*, 2007 WL 4553040 at *3.

#### 1. Pensioner Plaintiffs Do Not Have Standing To Claim The Unclaimed Settlement Fund.

In dismissing the Pensioner Plaintiffs' claims with prejudice, this Court held that the Pensioner Plaintiffs had "no vested property right in the unclaimed money" at issue in the litigation because it had not yet been deposited into a State pension fund, and furthermore, the Pensioner Plaintiffs lacked standing to bring a claim as UDUPA did not create a private right of action. *Id.* By advocating for the transfer of the unclaimed Settlement Fund to the State Treasurer, Plaintiffs are improperly attempting to backdoor relief to the Pensioner Plaintiffs whose claims in this litigation were dismissed with prejudice and who lack standing to seek any

8

relief in these proceedings. The Settlement Agreement expressly excluded from this settlement "the claims of the Pensioner Plaintiffs." (Settlement Agreement, Docket No. 251-1, Section 1.30.) As such, the Pensioner Plaintiffs are not foreclosed from seeking a remedy for their claims in an appeal. Their remedy, however, is not the unclaimed settlement funds.

### 2. The Unclaimed Settlement Fund Is Not Covered By UDUPA.

Pensioner Plaintiffs' claims and UDUPA do not encompass the unclaimed funds arising from the settlement of the Arrestee Plaintiffs' claims. Disbursement to the State Treasurer, and ultimately to a State pension fund, under UDUPA fails to benefit the Plaintiff Arrestee Class, whose claims to recover their inventoried money are extinguished by the Settlement Agreement and therefore not available at some later point under UDUPA. (*Id.* at Section 6.4 ("Any Class Member who does not file a valid Proof of Claim with the Claims Administrator will not be entitled to receive any of the proceeds from the Settlement, but will otherwise be bound by all terms of the Stipulation and this Settlement . . . and will be barred from bringing any action against any Released Parties concerning the Settled Claims."); *see also* Article VII (Discharge of Claims).) As such, Plaintiffs' proposed distribution of the unclaimed funds amounts to general escheat to the State, which is not only contrary to the policy underlying the settlement but is likewise inconsistent with the purpose of UDUPA. *See Canel v. Topinka,* 212 Ill. 2d 311, 327, 818 N.E.2d 311, 322-23 (2004) ("[D]elivery of [UDUPA] property is not escheat . . . title to the property remains in the owner and never vests in the state"). For the reasons discussed in Section C, *infra.*, reversion of the unclaimed funds to the City will do more to benefit the interests of the class than Plaintiffs' proposed distribution to the State.

### 3. The *Cy Pres* Doctrine is Inapplicable.

Although Plaintiffs may attempt to argue that transfer of the unclaimed funds to the State Treasurer is a form of *cy pres*, the *cy pres* doctrine seeks to disburse unclaimed funds to charities

9

"for the aggregate, indirect benefit of the class." *See* NEWBERG ON CLASS ACTIONS, 4th Ed., § 10:17. Again, because transfer of the unclaimed funds to the Treasurer under UDUPA does not benefit the Class, disbursement to the State Treasurer (which is not a charity) is not a proper exercise of the *cy pres* doctrine. C*f. In re Folding Carton Antitrust Litig.,* 744 F.2d 1252, 1255-56 (7th Cir. 1984) (holding that neither plaintiff class nor settling defendants in antitrust litigation which was deterrent in nature had any right to unclaimed balance of settlement fund and it was appropriate for district court to consider the *cy pres* doctrine to achieve an equitable disposition of the reserve fund). Finally, *cy pres* distribution is also not a proper remedy here because there has been no finding of liability against the City. *See Six Mexican Workers*, 904 F.2d at 1307 ("The use of *cy pres* or fluid recovery to distribute unclaimed funds may be considered only after a valid judgment for damages has been rendered against the defendant").

For all of these reasons, Plaintiffs' proposed distribution should be rejected, and the unclaimed Settlement Fund should revert to the City.

### C. THE EQUITIES FAVOR RETURNING THE UNCLAIMED SETTLEMENT FUND TO THE CITY TO OFFSET THE COSTS OF IMPLEMENTING THE SETTLEMENT AND TO FURTHER IMPROVE AND ENFORCE THE REVISED INVENTORY PROCEDURE.

As previously discussed, to the extent the property inventory notice provided to Class Member arrestees was deficient, the City has agreed to provide Class Members with notice and an opportunity to reclaim their inventoried money through the settlement. (Settlement Agreement, Docket No. 251-1, Articles VI, X.) Moreover, as part of the settlement, the City has further agreed to provide post-class relief and a remedy to address the alleged deficiencies in the process for returning arrestees' non-forfeitable inventoried money.

To that end, in the Settlement Agreement, CPD agreed to implement a new inventory and return procedure as follows:

> Effective no later than January 1, 2011,[4] CPD will implement a policy and procedure providing that CPD, acting through and in conjunction with the Cook County State's Attorney or the City's Department of Law, will obtain judicial approval through a court order or search warrant to retain non-forfeitable inventoried money being held for investigation and/or evidence, and deposited into a CPD bank account for longer than thirty (30) days . . . .

(*Id.* at Section 5.2.)

The Settlement Agreement further provides:

> Unless a Court Order or search warrant is obtained as provided in Section 5.2, beginning no later than the thirty-first (31st) day after inventorying, non-forfeitable inventoried money deposited into a CPD bank account will be made available for pickup by the owner, as identified in the Property Inventory, from CPD's Evidence and Recovered Property Section ("ERPS") for a period of no more than sixty (60) days. Such inventoried money which is not picked up (unless otherwise directed by the owner) will be sent to the owner at the last known address provided to CPD via Certified or Registered United States Mail, Return Receipt Requested. The cost of such mailing will be deducted from the total amount of the money to be returned unless the owner is incarcerated . . . .

(*Id.* at Section 5.3.)

The CPD's revised inventory procedure promotes the interests of the class action settlement because it ensures that post-class individuals whose money is inventoried in the same manner as the class members will have their money released and available for pick up by the owner within thirty days of the date of arrest unless a court order or search warrant is obtained providing for CPD's continued retention of the inventoried money. (*See id.* at Sections 5.2-5.4.)

Given these difficult economic times, the balance of the equities favors returning the unclaimed class settlement funds to the City to offset the costs of implementing the policy changes under the settlement.[5] Moreover, to the extent the Court believes necessary and

---

[4] It is currently anticipated that CPD will implement this change to its procedures on or about November 1, 2010, 60 days earlier than required by the settlement.

[5] *See* Hal Dardick and John Byrne, *Daley Budget Raids Reserves Next Mayor Will Be Limited in Flexibility*,

11

appropriate, the City would designate any funds remaining after reimbursement of the City's costs specifically for future improvements and enforcement of the inventorying and return procedure, including future upgrades to its electronic inventorying system, eTrack, thereby further indirectly benefiting the interests of the class and promoting the underlying policy of the class action settlement. If the Court determines that this is the appropriate use of the unclaimed funds, and believes it necessary, prior to any distribution, and after the determination of the amount of unclaimed funds, the City would submit a plan as to its intended use of the unclaimed funds.

Finally, there is precedent supporting the City's proposed use of unclaimed funds in previous class action settlements involving the City and CPD. In *Pollard v. Daley*, No. 87 C 2401, where Plaintiffs' counsel in this litigation represented a class of arrestee plaintiffs alleging that the City refused to return money seized during narcotics related arrests even though forfeiture proceedings had not and would not be filed against the funds, the parties entered into a federal consent decree which provided that any money remaining unclaimed after sixty days from the date of the mailing of notice may be claimed by the City specifically "to aid in narcotics law enforcement." (*See* Pollard Final Consent Decree, 1989 WL 152394, at *4 (N.D. Ill. Dec. 4, 1989), attached hereto as Exhibit B.) The same rationale applies to the disposition of the unclaimed funds in this case to better serve the interests of the class by improving CPD's inventory and return procedure. *See Dem. Cent. Comm. of Dist. of Columbia v. Wash. Metro Area Tran. Comm'n,* 84 F.3d 451, 457 (D.C. Cir. 1996) (distribution to defendant transit authority to implement proposal to purchase new buses for use in affected service area was most

---

www.chicagotribune.com, Oct. 13, 2010, attached hereto as Exhibit A.

appropriate means of distributing restitutionary funds for fare overcharges to next best class of intended beneficiaries, current bus riders)

For all of these reasons, the equities strongly favor reversion of the unclaimed Settlement Fund to the City.

## CONCLUSION

WHEREFORE, the City requests that the Court rule that the City has an equitable ownership interest in the unclaimed Settlement Fund and order that such funds be properly returned to the City.

Dated: October 19, 2010

Respectfully submitted,

**DEFENDANTS THE CITY OF CHICAGO AND SUPERINTENDENT JODY WEIS.**

By: ___s/ Allen T. Slagel_____
One of their Attorneys

Allan T. Slagel (No. 6198470)
aslagel@shefskylaw.com
Kim R. Walberg (No. 6270782)
kwalberg@shefskylaw.com
SHEFSKY & FROELICH LTD.
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011

1162827_6