**IN THE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLA M. KENNEDY, et. al.** | ) | |
|     *Plaintiffs*, | ) | |
| | ) | **No. 06 C 4914** |
|   **vs.** | ) | |
| | ) | **Honorable Judge John Darrah,** |
| **CITY OF CHICAGO, et. al.** | ) | **Presiding.** |
|     *Defendants.* | ) | |

**PLAINTIFFS'S REPLY IN SUPPORT OF MOTION**
**TO SET ASIDE UNCLAIMED SETTLEMENT FUNDS**

Plaintiffs through their attorneys, Thomas Peters, Mary DeSloover, and Kevin Peters, state as follows in support of their Motion To Set Aside Unclaimed Settlement Funds:

**INTRODUCTION**

The issue before the Court is what to do with the settlement funds that remain unclaimed after all timely claims, administrative expenses, and attorneys fees are paid. As to these unclaimed monies, the parties agreed to disagree when they submitted their requests for preliminary approval of the proposed settlement. (*See* Doc. No. 251, Motion for Preliminary Approval of Class Action Settlement, Ex. 1, Stipulation and Agreement of Settlement, at 15-16). Section 4.6 of the proposed settlement provides that the parties will submit memoranda to the Court explaining their respective positions on the disposition of the unclaimed funds. *Id*. Thus, it was understood by the parties and the Court that the final disposition of the unclaimed settlement funds would be left to this Honorable Court's discretion. *Id*.

With that mind, Plaintiffs filed their Motion To Set Aside Unclaimed Funds for Transfer to the Illinois State Pension Fund. (*See* Doc. No. 258). The issue first arose during summary

judgment proceedings. Back then, the City claimed it had an equitable interest in any unclaimed funds based on the Law Enforcement Disposition of Unclaimed Property Act ("LEDPA"), 765 ILCS 1030/1, *et seq.*, and a City ordinance (CHICAGO, IL. CODE § 2-84-160). (*See* Doc. No. 158, Defendants's Motion in Support of Their Motion for Summary Judgment, at 14-15). The Court rejected out of hand the City's reliance on LEDPA, but left open the possibility that the City Ordinance might apply. (Doc. No. 218, Order and Opinion on Cross-Motions for Summary Judgment, at 10) ("Defendants's compliance with LEDPA is besides the point, however, as the terms of the act itself reveal that it does not apply to the instant situation."). So, when the parties agreed to submit the unclaimed funds issue to this Honorable Court, Plaintiffs believed that the City would continue to claim an interest in the unclaimed settlement funds based on their past reliance on the Ordinance. Plaintiffs, therefore, addressed the Ordinance in their Motion to Set Aside Unclaimed Funds and proved that the Ordinance does not create an equitable interest on behalf of the City in the unclaimed settlement funds. (*See generally* Doc. No. 258).

Plaintiffs proved that, as misconstrued by the City, the Ordinance would violate the Due Process Clause by allowing a forfeiture without notice or a hearing. (Doc. No. 258, at 7-8) (citing, *inter alia*, *United States v. James Daniel Good Real Prop.,* 510 U.S. 43, 48 (1993)). Plaintiffs then proved that a common sense reading of the Ordinance leaves no doubt that the Ordinance never was intended to apply to inventoried cash. (Doc. No. 258, at 8-12). The City has no interest, equitable or otherwise, in the unclaimed funds. Every penny in the Settlement Fund was seized from a class member and is owed to the class. In fact, the City's very able counsel all but concede that the Ordinance, on which the City previously relied, does not apply. (*See generally* Doc. No. 260). The City's memorandum in support of their motion regarding the disposition of the unclaimed funds barely references the Ordinance, and that reference is buried

2

in a footnote. *Id*. at 7 n. 3.

The City nonetheless proceeds as if it has an "equitable" interest in the unclaimed funds, when no such interest exists. Nor does the City explain how that phantom interest trumps a specific state statute that expressly provides for the disposition of unclaimed funds. *See* 765 ILCS 1025/1, *et seq*. (codifying the Uniform Disposition of Unclaimed Property Act ("the UDUPA"), which requires transfer of unclaimed funds to the state while preserving the ownership interests of the class members). The UDUPA governs the disposition of the unclaimed funds, even if the City had an equitable interest in those funds, which it does not have. The Court, therefore, should find that the Ordinance does not apply to inventoried cash.

## I. TRANSFER OF THE FUNDS IN ACCORDANCE WITH THE UDUPA PROTECTS THE OWNERSHIP INTEREST OF CLASS MEMBERS.

According to the City, "Plaintiffs proposed distribution of the funds to the State of Illinois does not benefit the class . . . and attempts to provide a remedy to state pensioners who the Court has already ruled have no standing." (Doc. No. 260, at 1, 2). Not true, but the City's assertion would not make a difference even if it were true.

The Illinois legislature decided years ago that the best disposition of money that is left unclaimed is transfer of that money to the state pension fund after seven years. *See* 765 ILCS 1025/8. Whether that legislative determination is wise or foolhardy is beside the point. The elected officials of Illinois have spoken and their word is final on this topic. *Phillips v. Wash. Legal Found.,* 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998); *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 114, 59 L.Ed.2d 136 (1979). Without admitting it, the City asks this Honorable Court to turn a blind eye to a valid, legislative pronouncement on an issue that is uniquely within the ambit of the state's legislative prerogative. *Akanda v. Grounds*, 555 F.3d

586, 590 (7th Cir. 2009); *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007). Federal courts are not authorized to pick and choose among state laws, enforcing wise ones while ignoring others. *See A Woman's Choice-East Side Woman's Clinic v. Newman*, 305 F.3d 684, 700-01 ("It is incumbent upon the federal judiciary to respect basic principles of federalism and give considerable deference to a state legislature's carefully reasoned decision."). Instead, federal courts, including this Honorable Court, are duty bound to enforce state law, without regard for the wisdom or foolishness of the law. *Id.*

That said, the UDUPA is a well-conceived legislative act. It identifies a pressing state financial problem – grossly underfunded pension plans – and offers a solution that ameliorates the problem without forfeiting the property rights of individual citizens. *See Alvarez v. Pappas*, 229 Ill.2d 217, 226, 890 N.E.2d 434, 440 (2008) ("Ownership of the property remains with the owner and never vests with the State"). By allowing Illinois' pension funds to use the unclaimed funds, after seven years have passed, the UDUPA reduces the deficit of the state's pension funds. *Id.*; *see also* B.J. Lutz, *Illinois Pension Fund Worst in Nation*, NBC Chicago (Feb. 18, 2010), http://nbcchicago.com/news/local -beat/illinois-pension-liability-84732772.html (last visited Dec. 13, 2010). At the same time, the UDUPA preserves the rights of the owners – here the class members – by specifically mandating that the original owners's interests never are forfeited to the state. *Alvarez*, 890 N.E.2d at 440. Ten or fifteen years later a property owner may file a request for the return of his previously unclaimed money and that request must be honored by the state. *See id.* The City therefore could not be more wrong when it inaccurately asserts that application of the UDUPA "does not benefit the class..." (Doc. No. 260, at 4). The opposite is true. By transferring the unclaimed finds to the state in accordance with the UDUPA, the ownership rights of class members are preserved in perpetuity. *Alvarez*, 890 N.E.2d at 440.

4

The City's preferred plan, on the other hand, amounts to a forfeiture of the funds without notice or a hearing. *But see United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *United States v. $8,850*, 461 U.S. 555, 562 n. 12 (1983); *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972); *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965); *Covey v. Town of Somers*, 351 U.S. 141, 146 (1956); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950) (all reiterating the well-established due process principle requiring notice and a hearing before the government extinguishes a property interest). This is not a case where the City pledged its own money to establish the Settlement Fund. The fund was established with, and remains completely a product of, cash inventories that are owned by, and owed to, the class.

To the extent the City urges the Court to "return" the unclaimed funds to the City's coffers, the City is misleading the Court. The City has not invested any of its own money in the Settlement Fund, so "returning" the money to the City really means the Court is ordering a *de facto* forfeiture of the class members's money. The City cavalierly implores the Court to declare the money forfeited without adequate procedural safeguards and in direct contravention of a state legislative act. Plaintiffs's proposal protects in perpetuity the ownership rights of class members while simultaneously complying with a valid state, legislative determination. *See Alvarez*, 890 N.E.2d at 440; 765 ILCS 1025/1, *et seq*. The City's proposal results in an unconstitutional windfall to the City, while simultaneously violating state law. The choice, therefore, is clear - the class, not the City, is entitled to the unclaimed funds.

## II. THE CITY DOES NOT HAVE AN EQUITABLE INTEREST IN THE UNCLAIMED SETTLEMENT MONEY.

The City's second argument likewise is based on the false premise that the City has an

equitable interest in the unclaimed settlement money. (Doc. No. 260, at 4-7) According to the City's misconceived contentions, this case is analogous to *Wilson v. Southwest Airlines*, 880 F.2d 807 (5th Cir. 1989). (Doc. No. 260, at 4-5). But *Wilson* is not analogous, and the factual and legal distinctions are striking.

In *Wilson*, the plaintiffs alleged sex-based discrimination in the airlines's hiring practices. *Id*. at 809. The trial was bifurcated, and the plaintiffs prevailed on the issue of liability. *Id*. Before the damages portion of the trial began, Southwest offered to create a one million dollar settlement fund and to enter into a consent decree that provided male hires with retroactive seniority. *Id*. The plaintiffs in *Wilson* agreed, and the fund was created using Southwest Airlines's money.

Unlike Plaintiffs's case, where every penny in the Settlement Fund consists of money that the City seized from class members, the settlement fund in *Wilson* was created from money that came directly from Southwest Airlines. *Id*. Not surprisingly, the *Wilson* court concluded that Southwest had an equitable interest in the unclaimed settlement funds, all of which came out of the airlines's bank account. But what has that to do with Plaintiffs's case where all of the money in the Settlement Fund was taken from the pockets of class members? If the City had funded the settlement with its money, *Wilson* might be instructive. The City, however, did not fund the settlement so the City loses not one penny due to transfer of the unclaimed funds to a new custodian (the state) who must retain the money for the rightful owners – the class members.

Another important distinction that the City glosses over is that, in *Wilson*, there was no state statute governing unclaimed funds. Here, on the other hand, the UDUPA expressly provides for the disposition of those funds and does so in a way that assures all class members that their money always will be returnable to them upon request. *Alvarez*, 890 N.E.2d at 440. The airlines

6

in *Wilson* "turned over *its* money" so the airlines had an equitable interest, and that interest was not trumped by a state law prescribing a specific disposition of unclaimed funds. *See* 880 F.2d at 813 (emphasis added). Here, the City did not turn over any of its money, and there is a specific state law (the UDUPA) mandating transfer of the unclaimed funds to the Illinois pension funds after seven years. *Wilson*, therefore, is inapposite and, if anything, supports Plaintiffs's motion.

For the same reasons, the City is plainly wrong when it contends (1) that it should not be "obligated to pay more than the amount claimed," and (2) that it should not be deprived "of more funds than those necessary to compensate class members..." (Doc. No. 260, at 7). Again, the City is not paying anything. Money that is owned by the class is being returned to the class; the City pays nothing. And the City is not being "deprived" of any funds. The Settlement Fund, as described in the Preliminary Approval Order, consists entirely of class member money. The City cannot be deprived of money unless and until it antes up. Since the City has not put any of its money into the Settlement Fund, the City is not deprived of any money that is transferred in accordance with the UDUPA. Nor is the City overcompensating the class. The Settlement Fund consists entirely of class member money. Transferring the money in accordance with the UDUPA simply preserves the ownership rights of the class without causing any financial harm to the City.

### III.    GOOD DEEDS DO NOT CREATE PROPERTY RIGHTS AND CERTAINLY DO NOT ENTITLE THE CITY TO A WINDFALL FORFEITURE.

In a creative argument, the City suggests that its willingness to correct the many flaws in its inventory system somehow creates an equitable interest in the unclaimed settlement funds. (Doc. No. 260, at 7-8). Property rights, however, are creatures of state statutes or the common law. *See Leis v. Flynt*, 439 U.S. 438, 441, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) (reiterating well-established principle that "the Constitution does not create property interests . . . it extends

7

various procedural safeguards to certain interests 'that stem from an independent source such as state law.'"). Plaintiffs appreciate the City's efforts to correct its inventory policies and establish a new policy that, over time, will assure the return of millions of dollars that otherwise would have gone unclaimed.

Without deprecating the City's efforts, the policy changes came four years after Plaintiffs filed this case and only when the City was staring at an imminent trial date. The long overdue changes put an end to a system that was designed to prevent, or at the very least deter, rightful owners from securing the return of their money. Whether the City acted in good faith or merely to cut its losses at trial is debatable. It also is beside the point. Good deeds do not create property rights.

By the City's logic, a "good samaritan" who helps an elderly blind woman across a busy street has the "right" to all of the money in her wallet. No such "right" exists. In fact, the "good samaritan" would be subject to arrest for theft. The City's eleventh hour change in policy was the right thing to do, regardless of the City's actual motivation. But even if the Court assumes the City was motivated solely by a desire to help the class, the City's good faith does not entitle the City to a windfall profit. Giving any money to the City amounts to a forfeiture of the class's money without due process. Unless the City can identify – and so far it has not – a statute or common law principle that creates an equitable interest in property whenever a municipality does the right thing, the City's conduct does not create a property interest in the class's money.

On a related note, the City contends that "its notices and policies regarding inventoried money were constitutional" so the City should not be penalized. (Doc. No. 260, at 7). This argument is wrong on many levels. First, the City is not being penalized. Transferring the money to the state merely changes the custodian; class members retain their ownership rights. *Alvarez*,

890 N.E.2d at 440. Since the City did not contribute to the Settlement Funds, the City is not penalized by the transfer of the unclaimed money. Second, refunding any money to the City is an unauthorized forfeiture. *See Raffel v. Medallion Kitchens of Minn., Inc.*, 139 F.3d 1142, 1145 (7th Cir. 1998); *First Nat'l Bank and Trust Co. of Evanston v. First Nat'l Bank of Skokie*, 178 Ill. App. 3d 180, 533 N.E.2d 8, 14 (1st Dist. 1988) ("[T]he law abhors a forfeiture"). Third, the Settlement Class is limited to restitution, so the class need not prove that the City engaged in any wrongdoing. *Norton v. City of Chicago*, 293 Ill. App. 3d 620, 690 N.E.2d 119, 126 (1st Dist. 1997). The only issue before the Court, when the remedy is limited to restitution, is identifying the rightful owner of the money. Since the City is not now, and never can be, the owner of the cash that it seized from class members, the class is entitled to restitution regardless of any wrongdoing by the City.

## IV. PLAINTIFFS ARE NOT ASSERTING A RIGHT ON BEHALF OF THE PENSIONERS.

When Plaintiffs filed this case the then putative restitution class dated back five years. (*See* Doc. No. 218, at 3). The UDUPA only requires a transfer from the municipal custodian (here the City) to the state after money has gone unclaimed for seven years. *Alvarez*, 890 N.E.2d at 440; 765 ILCS 1025/8. No putative class member had money that had been detained for seven years, so the then putative restitution class had no right to request a transfer of any funds from the City to the state. This case is now four years old and with the passage of time some class members have money that has been in the City's custody for more than seven years. As to those class members and that money, the UDUPA mandates that the City transfer the unclaimed money to the state. *Id*. The transfer is a function of the UDUPA's timetable and the passage of time since this suit was filed. Nothing more and nothing less.

9

The City, however, mischaracterizes the transfer as an attempted end run around the Court's ruling – that the pensioner Plaintiffs do not have standing to assert their rights, until money actually was transferred to the pension fund. (*See* Doc. No. 260, at 8) (citing Doc. No. 218, Order and Opinion on Cross-Motions for Summary Judgment, at 3). As the Court no doubt recalls, when Plaintiffs filed this case, a group of pensioners asserted they had property interests arising from the UDUPA, and the City had violated the pensioners' property interests. They claimed that the City was obligated to transfer any unclaimed money that already had been in the City's custody for seven or more years. Thus, when Plaintiffs filed this suit, the pensioner Plaintiffs claimed an interest in money that was in the City's custody before September 11, 1999; going back seven years before Plaintiffs filed suit. (*See* Doc. No. 218, Order and Opinion on Cross-Motions for Summary Judgment, at 3). Unlike the putative pensioner Plaintiffs, the arrestee Plaintiffs's claims only dated back to September 11, 2001; five years before Plaintiffs filed suit. There was no overlap in the claims, and the rights asserted were based on completely different theories of liability. The Court upheld the restitution and due process claims of the arrestee Plaintiffs, but dismissed the claims of the pensioner Plaintiffs. *Id*. at 5-12. And that ruling is not at issue now.

The arrestee Plaintiffs's claims still date back to September 11, 2001. Now, however, some of those claims are more than seven years old. As to those claims of the arrestee Plaintiffs that are now more than seven years old, any unclaimed settlement money is subject to transfer to the state in accordance with the UDUPA. But that transfer is based on the rights of the arrestee Plaintiffs, not on any interest that the pensioners might have. That the pensioners benefit as a result of the valid property rights of the arrestee class members is no reason to ignore the well-established rights of the arrestee Plaintiffs.

10

## V.  THE PRELIMINARY SETTLEMENT AGREEMENT SPECIFICALLY PROVIDES FOR THE RELIEF PLAINTIFFS REQUEST.

The City admits that Section 4.6 of the Settlement Agreement provides that the parties do not agree on the final disposition of any unclaimed settlement funds. (*See* Doc. No. 251, Ex. 1, Stipulation and Agreement of Settlement, at 15-16) ("[T]he parties disagree as to the proper disposition of" the unclaimed funds.). Section 4.6 further provides that the parties will submit memoranda to the Court and that Plaintiffs maintain the unclaimed funds must be transferred to the state pension fund in accordance with the UDUPA. *Id.* ("Thus, the parties have agreed to have the Court determine the appropriate recipient of any such unallocated funds."). The City nonetheless claims that a more general provision (Section 6.4) of the proposed settlement prohibits Plaintiffs from asserting their right to protect their property interest. Established rules of construction, however, require the Court to apply the more specific provision (§ 4.6) to the extent there is any conflict with a more general provision (§ 6.4). *Univ. of Chicago Med. Ctr. v. Sebelius*, 618 F.3d 739, 745 (7th Cir. 2010) (specific provisions take precedence over general provisions).

As the City reads Section 6.4 (general release), Plaintiffs' rights under Section 4.6 (specific exemption) are illusory. *But see Harrell v. U.S. Postal Serv.*, 445 F.3d 913, 925 (7th Cir. 2006) (holding that constructions that render one provision in a document superfluous are to be avoided). Plaintiffs have the right to submit a memorandum explaining why the unclaimed funds should be transferred to the state, but the relief Plaintiffs request is foreclosed by the general release of Section 6.4, according to the City. That clearly was not the intent of the parties, and the City's sudden attraction to Section 6.4's general release is born of desperation. Because the City's arguments on the merits are doomed, the City attempts to block the judicial review

11

guaranteed by Section 4.6 of the Settlement Agreement.

Section 6.4 (general release) moreover is not inconsistent with Section 4.6, if Section 6.4 is read in a common sense manner. Section 6.4 is a standard, general release that is commonly found in settlement agreements. It serves to protect the City against any new claims by class members relating to the monies that the CPD seized. But what is to happen with the unclaimed settlement funds is not a new or future issue; it is an issue the parties anticipated and addressed in the Settlement Agreement. Section 4.6 specifically exempts the unclaimed settlement money from the general release provisions of Section 6.4. As to that money, Plaintiffs retained their right in the Settlement Agreement to seek transfer of the money as required by the UDUPA. Section 4.6 in relevant part states, "Plaintiffs contend that the unallocated funds should be transferred to the Treasurer of the State of Illinois pursuant to the UDUPA." (Doc. No. 251, Ex. 1, at 15-16). Section 6.4 (the general release) therefore must be read in conjunction with Section 4.6 (the specific exemption) and, read that way, Section 6.4 provides the City with a release against all new or future claims relating to the unclaimed settlement funds. But Section 6.4 does not prevent the Court from transferring the unclaimed funds in accordance with the UDUPA; an issue that the parties expressly and unequivocally reserved for decision by this Honorable Court in Section 4.6 of the Settlement Agreement.

Nor is the City correct when it maintains that "Plaintiffs' proposed distribution of the unclaimed funds amounts to general escheat to the State..." (Doc. No. 260, at 9). Plaintiffs' proposal is mandated by the UDUPA, but a transfer of the funds is not a "general escheat" to the State. Instead, the UDUPA preserves the ownership rights of the class members who do not file timely claims. *See Alvarez*, 890 N.E.2d at 440. Their money is transferred from the City to the State, but the State, like the City, is merely a custodian of the money. *Id*. Ownership remains

12

vested with the class members. *Id*. Under Plaintiffs's plan, the property rights of the class are protected ad infinitum. Under the City's proposal, class members who do not file timely claims forfeit their money to the City. The plan that best protects the class is the preferred plan, and Plaintiffs' plan unquestionably is better designed to protect the interests of the class.

The City also misunderstands the purpose of *cy pres* distributions. A *cy pres* distribution of unclaimed settlement funds refers to a distribution to a third party, usually a charitable organization. JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS: LAW AND PRACTICE § 8:15 at 395 (6th Ed. 2010). *Cy pres* distribution is preferred over a refund to the defendants or an escheat to the government. *Id*. at 397 (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 784 (7th Cir. 2004). Plaintiffs' proposal is not a *cy pres* distribution because the unclaimed funds are not assigned to a charitable organization. Nor is Plaintiffs' proposal an escheat to the state since ownership of the funds is retained by the class. *See Alvarez*, 890 N.E.2d at 440. Instead, Plaintiffs' proposal protects the ownership rights of the class while conforming the distribution to the dictates of state law. *Id*. Thus, in every respect, Plaintiffs' proposal is the best distribution and use of the unclaimed funds.

## V. THE CITY'S ALTERNATIVE PROPOSAL LIKEWISE SHOULD BE REJECTED.

As an alternative to an unabashed forfeiture of the unclaimed settlement funds, the City offers to use the unclaimed funds to improve its inventory return procedures. (Doc. No. 260, at 10-11). The City offers no details so it is impossible to respond with any precision. As a general matter, the City's undefined, alternative plan is better than forfeiting the money to the City. But, unlike Plaintiffs' proposal, class members who do not file timely claims forfeit their ownership interests under the City's alternative proposal. Class members are not better off when their

property rights are forfeited, even if the forfeited money is used to improve the City's inventory return procedures.

The bigger problem with the City's alternative proposal, however, is the UDUPA, which requires the City to transfer the unclaimed funds to the state. *See* 765 ILCS 1025/8. The Court is duty-bound to honor and enforce state legislation, and the City offers no reason why, or how, the Court can simply ignore the UDUPA. Therefore, the City's alternative proposal, while a substantial improvement on its original plan, must be rejected.

Wherefore, Plaintiffs pray the Court will enter an order requiring the City to transfer all unclaimed settlement funds that have been in the City's possession for seven or more years to the State Treasurer in accordance with the UDUPA.

Respectfully submitted,

s/ Thomas Peters
THOMAS PETERS
ATTORNEY FOR PLAINTIFFS
53 W. Jackson Blvd., Suite 1615
Chicago, IL 60604
(312) 697-0022